STATE OF NORTH CAROLINA v. LAQUEZ EUGENE SIMMONS, Defendant

No. COA03-1272

(Filed 21 December 2004)

## 1. Criminal Law— motion for joinder of offenses—first-degree murder—common law robbery

The trial court did not abuse its discretion in a first-degree murder and common law robbery case by granting the State's motion for joinder even though the two offenses were separated in time by several days and involved different victims, because: (1) the offenses both involved defendant striking another person during an argument, the offenses involved the same dispute between defendant and the victim's female friends, and the time lapse between the offenses was only 5 days; (2) the fact that the victim was not present at the scene of the 3 April 2001 event is not a crucial factor in the analysis since the nature of the consolidated offenses is only one factor to be considered; (3) the events of 3 April constituted a critical point in the ongoing dispute between the victim and defendant, which resulted in the argument and struggle on 8 April 2001; and (4) defendant did not show that the joinder deprived him of a fair hearing on the murder charge since the evidence of the 3 April incident would have been admissible at the trial of first-degree murder pursuant to N.C.G.S. § 8C-1, Rule 404(b) for the purpose of showing intent and the chain of events explaining the context, motive and set-up of the crime.

## 2. Evidence— testimony—threats—incidents sufficiently similar

Evidence of a defendant's actions and statements leading up to a common law robbery with which a first-degree murder charge was consolidated for trial was properly admitted because: (1) defendant's statements and actions were admissible under N.C.G.S. § 8C-1, Rules 401 and 402 since evidence of defendant's

threatening motions and statements directed at the robbery vic-
tim tended to show that defendant put her in fear and the
testimony was probative of an essential element of common law
robbery; (2) the evidence would have been admissible at a sepa-
rate trial on the first-degree murder charge pursuant to N.C.G.S.
§ 8C-1, Rule 404(b); and (3) only 5 days separated the two inci-
dents, and on both occasions defendant threatened the victim's
guests with violence.

3. **Criminal Law— self-defense—denial of instruction**

   The trial court did not err in a first-degree murder case by
denying defendant's request for a jury instruction on self-defense,
because: (1) the trial court determined that defendant was the
aggressor and thus was not entitled to a jury instruction on per-
fect self-defense; (2) all the evidence showed that defendant
declined the victim's invitation to fight one-on-one, went inside a
mobile home, and then returned to the scene with a loaded
weapon; (3) the trial court determined that defendant did not
intentionally discharge the weapon under the belief that it was
necessary in order to save himself from death or great bodily
harm; and (4) even if the evidence supported an instruction on
imperfect self-defense, the trial court's failure to give one was
harmless when the jury returned a verdict of guilty on the charge
of first-degree murder.

4. **Robbery— common law—motion to dismiss—sufficiency of
   evidence**

   The trial court did not err by denying defendant's motion to
dismiss the charge of common law robbery even though defend-
ant contends there was insufficient evidence that he took the vic-
tim's phone with the intent to permanently deprive her of it,
because: (1) viewed in the light most favorable to the State, the
evidence showed that defendant slapped the phone out of the vic-
tim's hand, declared that it was his new phone, and began dialing
on it immediately after he stepped outside the house; (2) although
evidence that defendant returned the phone within a few days
tends to contradict the circumstantial evidence of defendant's
intent at the time of the taking, evidence supporting a contradic-
tory inference is not determinative on a motion to dismiss since
defendant's intent at the time of the taking is an issue for the jury
to resolve; and (3) a jury could reasonably find that defendant
had the intent to permanently deprive the victim of the phone at
the time of the taking, and the trial court explained that an intent

STATE v. SIMMONS

[167 N.C. App. 512 (2004)]

to temporarily deprive the victim of the property was not sufficient under the law.

Appeal by defendant from judgment entered 15 May 2003 by Judge Gregory A. Weeks in Cumberland County Superior Court. Heard in the Court of Appeals 26 August 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Daniel P. O'Brien, for the State.*

*Massengale & Ozer, by Marilyn G. Ozer for the defendant-appellant.*

ELMORE, Judge.

Laquez Simmons (defendant) was indicted on 15 October 2001 for first degree murder, common law robbery, and possession with intent to manufacture, sell, or deliver cocaine. The State moved to join the offenses for trial, and defendant moved to sever. The trial court granted the State's motion for joinder.

The State's evidence tended to show that defendant and Reginald Lee Edwards (the victim) had an ongoing dispute about defendant's treatment of the victim's female companions. The State offered eyewitness testimony of two incidents involving defendant, the 8 April 2001 shooting of the victim and the 3 April 2001 argument giving rise to the robbery charge. Izetta Young, a guest in the victim's home on 3 April while the victim was away at work, testified that defendant entered the home and threatened to punch her in the face. Lynette Smith, the victim's girlfriend, requested that defendant leave. Clifford Moore, another guest present at the time, brought defendant outside to speak with him. Defendant came back inside and attempted to slap Izetta Young across the face. When Ms. Young raised her hands to protect her face, defendant's contact knocked her cellular phone out of her hand. Defendant picked the phone up off the floor and stated that he had a new phone. Lynette Smith again requested that defendant leave the home, and defendant stated in response that he was going to slap her too. Defendant walked out of the home carrying Ms. Young's phone and began dialing on the phone after he stepped outside. When Clifford Moore demanded that defendant return the phone to Ms. Young, defendant exclaimed, "No . . . I'm going to shoot everybody out here." The next day, defendant spoke briefly with John Cooley, a cousin of the victim and the person who had purchased Ms. Young's cell phone. Mr. Cooley asked defendant why he took the

phone, and defendant stated that he would return the phone. Defendant did in fact bring the phone back to Mr. Cooley, although not the same day as this conversation. Mr. Cooley testified that defendant returned the phone to him a "[c]ouple days before" the date of the shooting.

Regarding the events of 8 April, the State's evidence tended to show that the victim and several acquaintances approached defendant while he was standing outside of a friend's home located in the same mobile home park as the victim's home. The victim asked defendant to apologize to Lynette Smith for the 3 April incident. Defendant refused, whereupon the victim suggested that he and defendant fight right there on the grass. Defendant declined to fight but stated that he was going inside to get a gun. Defendant threatened, "I'm going to shoot everybody." When he arrived back outside, defendant announced that he was "strapped" and lifted his shirt to reveal a gun in his waistband. The victim stated that he did not have a gun and asked defendant to put his gun down. Defendant pulled his gun out and struck the victim in the forehead with the gun's muzzle. The victim struggled to remove the gun from defendant's hands. John Cooley testified that defendant held the gun on the victim's head and shot him. After firing the shot, defendant pushed the gun against the victim's head, causing the victim to fall on his back. Defendant waved the gun around at the onlookers and then fled the scene in a car. Police detectives arriving on the scene interviewed the witnesses, including Clifford Moore. Mr. Moore told the detectives that there had been an argument between the victim and defendant going "back several days," and that this was the dispute over which the victim offered to fight defendant.

Defendant's girlfriend, Denise Hart, gave a statement about the 8 April incident to Detective Jeff Houston on 30 August 2001. On direct examination by defense counsel, Detective Houston testified to this statement given by Ms. Hart. This testimony tended to show that during the events leading up to the shooting, defendant came inside his friend's home and found a gun. In the presence of Ms. Hart, defendant checked that the gun was loaded. Shortly after defendant went back outside, Ms. Hart heard a shot and then looked outside and saw a body lying on the ground. According to Ms. Hart, defendant later told her that the gun had gone off by accident. On cross-examination by the State, Detective Houston testified that on the two previous occasions when he interviewed Ms. Hart, she made no mention of the shooting being an accident.

Defendant's 10 May 2001 statement given to Detective Jeff Houston was admitted at trial without any objection from defendant. This statement contained defendant's account of the two incidents, including his slapping Ms. Young during the phone incident on 3 April. The jury found defendant guilty of first degree murder and common law robbery and not guilty of possession with intent to manufacture, sell, or distribute cocaine. Defendant appeals from judgments entered on the verdicts.

I.

**[1]** Defendant's first assignment of error relates to the trial court's joinder of the common law robbery charge with the first degree murder charge. Defendant contends that joining these two offenses, separated in time by several days and involving different victims, was prejudicial error. We disagree.

Two or more offenses may properly be joined for trial if the offenses are "based on the same act or transaction or on a *series of acts or transactions connected together* or constituting parts of a single scheme or plan." N.C. Gen. Stat. § 15A-926(a) (2003) (emphasis added). This Court has held that in ruling upon a motion for joinder, a trial judge must utilize a two-step analysis: (1) a determination of whether the offenses have a transactional connection and (2) if there is a connection, a consideration of whether the accused can receive a fair hearing on the consolidated offenses at trial. *State v. Montford*, 137 N.C. App. 495, 498, 529 S.E.2d 247, 250, *cert. denied*, 353 N.C. 275, 546 S.E.2d 386 (2000). The motion to join is within the sound discretion of the trial judge, and the trial judge's ruling will not be disturbed absent an abuse of discretion. *State v. Perry*, 142 N.C. App. 177, 181, 541 S.E.2d 746, 749 (2001). However, if there is "no transactional connection, then the consolidation is improper as a matter of law." *Id.* (quoting *State v. Owens*, 135 N.C. App. 456, 458, 520 S.E.2d 590, 592 (1999)).

We cannot say that joinder of the two offenses was improper as a matter of law. In determining whether offenses are part of the same series of transactions, the following factors must guide the court: "(1) the nature of the offenses charged; (2) any commonality of facts between the offenses; (3) the lapse of time between the offenses; and (4) the unique circumstances of each case." *Montford*, 137 N.C. App. at 498-99, 529 S.E.2d at 250. No single factor is dispositive. *Id.* Here, the offenses both involved defendant striking another person during an argument; the offenses involved the same dispute between defend-

ant and the victim's female friends; and the time lapse between the offenses was only 5 days. The fact that the victim was not present at the scene of the 3 April events is not a crucial factor in the analysis because the nature of the consolidated offenses is only *one* factor to be considered.

At the pre-trial hearing on the State's motion for joinder, the trial judge considered several factors, including the factual connection between the two offenses and the time lapse of 5 days. The trial judge found that the confrontation between defendant and the victim on 8 April arose out of defendant's treatment of Ms. Young and Ms. Smith over the past few weeks. The trial judge stated his observations that the two incidents shared the same underlying dispute between the parties and that this dispute "culminated in the acts of [April] 8th." The record indicates that the events of 3 April constituted a critical point in the ongoing dispute between the victim and defendant, which resulted in the argument and struggle on 8 April. As such, we hold that the trial judge did not err in finding a transactional connection between the two offenses.

We must next address whether defendant has shown that the joinder deprived him of a fair hearing on the murder charge. In making this determination, we are mindful that "the question posed is whether the offenses are *so separate in time and place* and *so distinct in circumstances* as to render a consolidation unjust and prejudicial to an accused." *State v. Bowen*, 139 N.C. App. 18, 28, 533 S.E.2d 248, 254 (2000). In the context of joinder of charges, this Court has explained that "[w]hile the admissibility of [the] evidence pursuant to Rule 404(b) is not conclusive evidence of the absence of prejudice, it is a factor that we may consider." *Bowen*, 139 N.C. App. at 29, 533 S.E.2d at 255. If the offenses had not been joined, then evidence of the 3 April incident would have been admissible at the trial of the first degree murder charge pursuant to N.C.R. Evid. 404(b) for the purpose of showing intent. Rule 404(b) provides that while evidence of a person's prior bad acts is not admissible to show propensity, this evidence may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." N.C. Gen. Stat. § 8-C1, Rule 404(b) (2003). Our Supreme Court has held that Rule 404(b) is a general rule of *inclusion* of other bad acts of the defendant, "subject to the single exception that such evidence must be excluded if its *only* probative value is to show that defendant has the propensity or disposition to commit an offense of the nature of the crime charged."

*State v. Berry,* 356 N.C. 490, 505, 573 S.E.2d 132, 143 (2002). Here, testimony concerning Ms. Smith's requests that defendant leave the victim's home while defendant was engaged in an argument with Ms. Young was probative of defendant's mental state when the victim requested an apology from defendant. In addition, the 3 April incident was part of the chain of events explaining defendant's motive and the immediate context of the shooting. Although not expressly stated in Rule 404(b) itself, evidence of prior acts may be admitted if such evidence "pertain[s] to the chain of events explaining the context, motive and set-up of the crime" and "forms an integral and natural part of an account of the crime . . . necessary to complete the story of the crime for the jury." *State v. Smith,* 152 N.C. App. 29, 35, 566 S.E.2d 793, 798 (quoting *State v. Agee,* 326 N.C. 542, 548, 391 S.E.2d 171, 174 (1990)), *cert. denied,* 356 N.C. 311, 571 S.E.2d 208 (2002). Defendant's slapping of Ms. Young and his statement that he would slap Ms. Smith after she requested that he leave the victim's home are an essential part of the chain of events explaining defendant's motive. As there is no indication that joinder unfairly deprived defendant of a fair hearing, we hold that the trial judge's decision to consolidate the offenses in one trial was not an abuse of discretion.

## II.

[2] By a number of assignments of error, defendant next challenges the admission of testimony describing the events of 3 April. Defendant argues that this testimony was irrelevant and unfairly prejudicial. We disagree.

First, defendant's statements and actions on 3 April were admissible under N.C.R. Evid. 401 and 402. Evidence of defendant's threatening motions and statements directed at Ms. Young tended to show that defendant put Ms. Young in fear. Because this testimony was probative of an essential element of common law robbery, it was admissible at trial where the robbery offense was properly joined. Second, as discussed *supra,* the 3 April evidence would have been admissible at a separate trial on the first degree murder charge pursuant to Rule 404(b).

Defendant argues, however, that the 3 April testimony was unfairly prejudicial and should have been excluded under N.C.R. Evid. 403. "When prior incidents are offered for a proper purpose, the ultimate test for admissibility is whether they are sufficiently similar and not so remote as to run afoul of the balancing test between probative value and prejudicial effect set out in Rule 403." *State v. West,*

103 N.C. App. 1, 9, 404 S.E.2d 191, 197 (1991). Only 5 days separated the two incidents, and on both occasions defendant threatened the victim's company with violence. We hold that the trial court did not abuse its discretion in admitting the 3 April testimony.

### III.

[3] In his next assignment of error, defendant contends that the trial court improperly denied his request for a jury instruction on self-defense. A defendant is entitled to an instruction on self-defense if there is any evidence from which the jury could reasonably find that the defendant believed it necessary to kill in order to protect himself from death or great bodily harm. *State v. Bush*, 307 N.C. 152, 160, 297 S.E.2d 563, 569 (1982). If, however, there is no evidence that the defendant in fact formed such a reasonable belief, then the issue of self-defense should not be submitted to the jury. *Id.*

Here, defendant requested that the trial court give an instruction on self-defense. At the charge conference, the defense counsel presented a theory of imperfect self-defense:

THE COURT: Okay. What's your contention on the issue of self-defense?

MR. COOPER: I would submit to the Court the issue of imperfect self-defense.

The trial court considered the applicability of both perfect and imperfect self-defense. A defendant has the defense of perfect self-defense if the following four elements existed at the time of the killing:

(1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and

(2) defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

(3) defendant was not the aggressor in bringing on the affray, *i.e.*, he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

(4) defendant did not use excessive force, *i.e.*, did not use more force than was necessary or reasonably appeared to him to

be necessary under the circumstances to protect himself from death or great bodily harm.

*State v. Norris*, 303 N.C. 526, 530, 279 S.E.2d 570, 572-73 (1981). If the defendant was the aggressor or used excessive force, he has lost the benefit of perfect self-defense but may be entitled to the defense of imperfect self-defense. *Id.*

The trial court determined that defendant was the aggressor and thus not entitled to a jury instruction on perfect self-defense. All of the evidence showed that defendant declined the victim's invitation to fight one-on-one, went inside the mobile home, and then returned to the scene with a loaded weapon. The trial court also determined that defendant did not intentionally discharge the weapon under the belief that it was necessary in order to save himself from death or great bodily harm. Rather, defendant's evidence supported a theory of accidental discharge of the weapon. Defendant's argument at the trial court's charge conference was that he raised the gun to the victim's head in order to protect himself. However, the evidence shows that the victim was unarmed. We note that even if the evidence supported an instruction on imperfect self-defense, the trial court's failure to give one was harmless. *See State v. Mays*, 158 N.C. App. 563, 577, 582 S.E.2d 360, 369 (when trial court submits to jury possible verdicts of first degree murder based upon premeditation and deliberation, second degree murder, and not guilty, a verdict of first degree murder renders trial court's failure to give imperfect self-defense instruction harmless), *cert. denied*, —— N.C. ——, —— S.E.2d —— (2004). The trial court submitted to the jury the possible verdicts of first degree murder based on premeditation and deliberation, second degree murder, involuntary manslaughter, and not guilty. As the jury returned a guilty verdict on the charge of first degree murder, any error by the trial judge in refusing to give an imperfect self-defense charge was not prejudicial.

IV.

**[4]** In his final assignment of error, defendant contends that the State's robbery charge was not supported by sufficient evidence. Specifically, defendant argues that there was insufficient evidence that he took Ms. Young's phone with the intent to permanently deprive her of it. In ruling on a motion to dismiss for insufficiency of the evidence, the trial judge must view the evidence in the light most favorable to the State, giving the State the benefit of all rea-

sonable inferences. *State v. Benson,* 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992). Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve. *Id.* If the trial judge determines that a reasonable inference of the defendant's guilt may be drawn from the evidence, the judge must deny the defendant's motion. *State v. Alexander,* 337 N.C. 182, 187, 446 S.E.2d 83, 86 (1994).

Here, the State did not present direct evidence that defendant formed the intent to permanently deprive Ms. Young of her phone. "However, '[i]ntent is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred.' " *State v. Herring,* 322 N.C. 733, 740, 370 S.E.2d 363, 368 (1988) (quoting *State v. Bell,* 285 N.C. 746, 750, 208 S.E.2d 506, 508 (1974)). Viewed in the light most favorable to the State, the evidence shows that defendant slapped the phone out of Ms. Young's hand, declared that it was his new phone, and began dialing on it immediately after he stepped outside the home. The evidence that defendant returned the phone within a few days tends to contradict the circumstantial evidence of defendant's intent at the time of the taking. However, this evidence supporting a contradictory inference is not determinative on a motion to dismiss because defendant's intent at the time of the taking is an issue for the jury to resolve. *State v. Scott,* 356 N.C. 591, 598, 573 S.E.2d 866, 870 (2002) ("Evidence in the record supporting a contrary inference is not determinative on a motion to dismiss."). A jury could reasonably find that defendant had the intent to permanently deprive Ms. Young of the phone at the time of the taking. Further, when instructing the jury on intent to permanently deprive, the trial judge explained that "an intent to temporarily deprive Izetta Young of the property is not sufficient under the law." We overrule defendant's assignment of error.

No error.

Judges CALABRIA and STEELMAN concur.