NO. COA13-1353

NORTH CAROLINA COURT OF APPEALS

Filed: 7 October 2014

STATE OF NORTH CAROLINA

v.                                    Columbus County
                                      Nos.  07 CRS 53533
                                            08 CRS 81-85
                                            08 CRS 91-93
SANTONIO THURMAN JENRETTE


Appeal by defendant from judgments entered 3 July 2013 by

Judge Douglas B. Sasser in Columbus County Superior Court.

Heard in the Court of Appeals 9 April 2014.


*Roy Cooper, Attorney General, by Marc X. Sneed, Assistant
Attorney General, for the State.*

*Marilyn G. Ozer for defendant-appellant.*


DAVIS, Judge.


Santonio Thurman Jenrette ("Defendant") appeals from his

convictions of two counts of first-degree murder, possession

with intent to sell and/or deliver cocaine, two counts of

possession of a firearm by a felon, two counts of assault with a

deadly weapon with intent to kill inflicting serious injury, and

two counts of conspiracy to commit first-degree murder.  On

appeal, he contends that the trial court erred in (1) granting

the State's motion to join all of the charges against him for trial; (2) failing to provide an adequate not guilty mandate at the conclusion of its jury instructions as to one of the first-degree murder charges; (3) instructing the jury on a charge of first-degree murder based on the lying in wait doctrine; (4) failing to adequately distinguish between the separate offenses with which Defendant was charged in its jury instructions; and (5) instructing the jury on a charge of first-degree murder based on the felony murder doctrine where there was insufficient evidence of the predicate felonies. After careful review, we conclude that Defendant received a fair trial free from prejudicial error.

**Factual Background**

The State presented evidence at trial tending to establish the following facts: On 21 September 2007, a confrontation took place between Connail Reaves ("Reaves") and Eugene Williams ("Williams") at a high school football game in Columbus County, North Carolina between East Columbus High School and Whiteville High School. Williams and Reaves were members of two rival gangs with a history of animosity toward each other. Williams was a member of the "Chadbourne Boys" and Reaves — like Defendant — was a member of the "Whiteville Circle Boys." Members of both groups, including Reaves and Williams, were prepared to fight as a result of the confrontation but

ultimately backed down due to the presence of law enforcement officers at the game.

After the game, several members of the Chadbourne Boys, including Williams, Darnell Frink ("Frink"), Travis Williams, Jason Williams, and William Inman ("Inman"), went to the stadium parking lot where they ran into Reaves again. Reaves was talking on his cellphone, and when he saw them, he pointed his finger at them as if he was pulling the trigger of a gun. Without engaging Reaves, they got into Jason Williams' Chevrolet Tahoe and drove to a local gas station, Sam's Pitt Stop.

At Sam's Pitt Stop, Williams, Frink, Travis Williams, Jason Williams, and Inman parked in front of a gas pump and were standing around the Tahoe when Jason Williams and Inman noticed a Ford Taurus pulling up toward them with the windows down. Jason Williams saw gun barrels protruding from both the front passenger window and the rear passenger-side window of the Taurus. He yelled "get down" and immediately thereafter occupants of the Taurus — all of whom were wearing ski masks — opened fire on them. Defendant, Reaves, and Defendant's 14-year-old cousin Rashed[1] Delamez Jones ("Jones") were three of the occupants of the Taurus who fired guns.

---

[1] The trial transcript at times spells Rashed as "Rasheed." Both spellings, however, refer to the same person.

Inman and Frink were both struck by bullets fired by the masked persons in the Taurus. Frink died as a result of his gunshot wounds. Inman was wounded in his left thigh and was taken to the hospital for treatment. A bystander, Antwan Waddell, was struck by bullets in his left thigh and ankle.

Shortly after the shooting, Sabrina Moody ("Moody") saw a Taurus containing Defendant, Marquell Hunter, and an unknown person pull into Stanley Circle directly in front of her parked car. Moody saw Defendant and the other two men get out of their vehicle, remove guns from the back of the Taurus, and then quickly run across the street in order to place the guns inside another vehicle.

The Taurus was found burning in a field off of Prison Camp Road later that night. It was ultimately identified as a car belonging to Johnny Sellers ("Sellers"), a used car salesman, that had been stolen along with Sellers' .25 caliber semi-automatic pistol from the dealership lot the evening of the shooting.

The following evening, Defendant and Reaves were driving a black Acura when they were pulled over by Officers Donald Edwards ("Officer Edwards") and Edward Memory ("Officer Memory") of the Whiteville Police Department because the rear taillight of the Acura was not working. Upon inspecting the backseat of the vehicle where Reaves was sitting, Officer Edwards observed

two pistols between Reaves' legs. Defendant and Reaves were removed from the vehicle, and the firearms were seized.

Officer Donnie Hedwin ("Officer Hedwin") of the Whiteville Police Department, who had arrived on the scene, patted down Defendant, handcuffed him, and placed him in the backseat of Officer Memory's patrol car. However, while the officers were securing the scene, Defendant managed to force open the door of Officer Memory's car and escape unobserved.

Upon searching the backseat of Officer Memory's car after Defendant had escaped, Officer Edwards discovered two baggies containing a substance that was later identified as cocaine wedged underneath the seat. A .45 caliber pistol recovered from the Acura was identified as the same weapon used in the shooting at Sam's Pitt Stop.

On 19 November 2007, approximately two months after the shooting, Defendant, who was still at large, took Jones out to the woods in a car he had borrowed from a woman named Rebecca White on the pretext of getting in some "target practice." While in the woods, Defendant shot Jones five times, killing him. Defendant then left Jones' body in the woods after wedging it under several nearby wooden pallets. The next day, Jones' mother and aunt, who were searching for Jones, saw Defendant walking along the side of the road. When Jones' mother asked him whether he had seen Jones, Defendant "just kept walking, he

wouldn't look at [her]." On 5 December 2007, Jones' body was discovered in the woods off of Barney Tyler Road in Hallsboro, North Carolina.

Defendant fled to Gary, Indiana, where he was eventually apprehended and extradited back to North Carolina. Prior to being apprehended, Defendant filmed a video of himself performing a piece of rap music that he had composed. The lyrics of the song mentioned both the location where Jones' body was found and the manner in which he had been killed.

While in custody pending trial, Defendant told Aaron McDowell ("McDowell"), Defendant's cellmate at the Columbus County Jail, how and why he had killed Jones, explaining that he had done so in order to prevent Jones from revealing Defendant's role in the 21 September 2007 shooting. He also told McDowell he had taken Jones out to a secluded area in Hallsboro to shoot him.

Jeffrey Morton ("Morton"), another inmate in the Columbus County Jail who was incarcerated in the same cell block as Defendant, overheard Defendant talking to a third inmate, Rufus McMillian, about the murder of Jones. Specifically, Morton heard Defendant state that he considered Jones to be "a weak link," that he took Jones "to a wooded area for target practice[,]" and that he "basically . . . smoked a couple of blunts with this young guy and took him out and gave him a

pistol and they shot some and then he turned the pistol on him and shot him five or six times."

Defendant was indicted on (1) two counts of possession of a firearm by a felon; (2) the first-degree murder of Frink; (3) two counts of assault with a deadly weapon with intent to kill inflicting serious injury; (4) two counts of conspiracy to commit first-degree murder; (5) the first-degree murder of Jones; (6) first-degree kidnapping; (7) conspiracy to commit first-degree kidnapping; (8) one count of possession with intent to sell and/or deliver cocaine; and (9) possession of a stolen firearm. A jury trial was held in Columbus County Superior Court on 24 June 2013. At the close of all the evidence, the trial court dismissed the charge of possession of a stolen firearm.

Defendant was convicted of all remaining charges except for the charges of first-degree kidnapping and conspiracy to commit first-degree kidnapping. With regard to the murder of Frink, the jury found him guilty on theories of premeditation and deliberation, felony murder, and lying in wait. As to the murder of Jones, the jury found him guilty on theories of premeditation and deliberation and felony murder.

Defendant was sentenced to two consecutive life sentences without the possibility of parole for the murders of Frink and Jones. In addition, he was sentenced to (1) 8-10 months for

possession with intent to sell and/or deliver cocaine; (2) 15-18 months for each count of possession of a firearm by a felon; (3) 100-129 months for each count of assault with a deadly weapon with intent to kill inflicting serious injury; and (4) 189-236 months for each count of conspiracy to commit murder. These sentences were ordered to run concurrently with the sentence imposed for the first-degree murder of Jones. Defendant gave notice of appeal in open court.

## Analysis

### I. Joinder

Defendant argues that the trial court abused its discretion in allowing all 12 of the offenses for which he was charged to be joined for trial. Specifically, he contends that joinder was improper due to the lack of a sufficient transactional similarity between the 12 charges.

"The motion to join is within the sound discretion of the trial judge, and the trial judge's ruling will not be disturbed absent an abuse of discretion. However, if there is no transactional connection, then the consolidation is improper as a matter of law." *State v. Simmons*, 167 N.C. App. 512, 516, 606 S.E.2d 133, 136 (2004) (internal citations and quotation marks omitted), *appeal dismissed and disc. review denied*, 359 N.C. 325, 611 S.E.2d 844 (2005). "On appeal, the question of whether offenses are transactionally related so that they may be joined

for trial is a fully reviewable question of law." *State v. Huff*, 325 N.C. 1, 22, 381 S.E.2d 635, 647 (1989) (citation omitted), *vacated on other grounds*, 497 U.S. 1021, 111 L.E.2d 777 (1990).

We have held that

> in ruling upon a motion for joinder, a trial judge must utilize a two-step analysis: (1) a determination of whether the offenses have a transactional connection and (2) if there is a connection, a consideration of whether the accused can receive a fair hearing on the consolidated offenses at trial. . . . In determining whether offenses are part of the same series of transactions, the following factors must guide the court: (1) the nature of the offenses charged; (2) any commonality of facts between the offenses; (3) the lapse of time between the offenses; and (4) the unique circumstances of each case. No single factor is dispositive.

*Simmons*, 167 N.C. App. at 516, 606 S.E.2d at 136-37 (internal citations and quotation marks omitted).

In the present case, while the charges against Defendant stemmed from a series of events that occurred over the course of approximately two months, they were factually related. The State's evidence tended to show that Defendant was present during, and participated in, the shooting at Sam's Pitt Stop along with Reaves and Jones. The following night, Defendant and Reaves were pulled over, and two firearms were recovered from their possession, one of which was ultimately shown to have been used in the shooting the previous evening. This evidence shows

a direct link between the possession of a firearm by a felon charges and the charges arising directly out of the shooting at the gas station. Furthermore, the discovery of the cocaine forming the basis for the charge of possession with intent to sell and/or deliver cocaine occurred during the course of the traffic stop.

The charges related to the killing of Jones were also transactionally related. In *State v. Hunt*, 323 N.C. 407, 373 S.E.2d 400 (1988), *vacated on other grounds*, 494 U.S. 1022, 108 L.Ed.2d 602 (1990), our Supreme Court held that two murders are transactionally related when the second is committed in order to cover up the first. "It is apparent that the second murder in this case was an act connected to the first murder. The second murder was committed to avoid detection for the first murder. This transactional connection supports the consolidation of all the charges for trial pursuant to N.C.G.S. § 15A-926(a)." *Id*. at 421, 373 S.E.2d at 410.

Similarly, the evidence in the present case tended to show that Defendant killed Jones so as to avoid being implicated in the murder of Frink. As such, we are satisfied that the transactional connection between these events was sufficient to support the trial court's granting of the State's motion for joinder of all of these charges. Furthermore, Defendant has failed to offer any persuasive argument why the consolidation of

these charges rendered him unable to receive a fair trial on all of the charges against him. *See State v. Bowen*, 139 N.C. App. 18, 29, 533 S.E.2d 248, 255 (2000) (where "[t]here is no evidence defendant was hindered or deprived of his ability to defend one or more of the charges [against him] . . . [t]he trial court's error in joining the offenses for trial was harmless" (internal citation and quotation marks omitted)).

Based on our consideration of the factors set out in *Simmons*, we conclude that the trial court did not abuse its discretion in granting the State's motion for joinder. Therefore, Defendant's argument on this issue is overruled.

## II. Not Guilty Mandate

Defendant next contends that the trial court erred in its instructions to the jury regarding the first-degree murder charge as to Frink by failing to adequately instruct the jury of its duty to return a verdict of not guilty if the State failed to establish his guilt beyond a reasonable doubt. Where, as here, a defendant does "not object at trial to the omission of the not guilty option from the trial court's final mandate to the jury, we review the trial court's actions for plain error." *State v. McHone*, 174 N.C. App. 289, 294, 620 S.E.2d 903, 907 (2005), *disc. review denied*, 362 N.C. 368, 628 S.E.2d 9 (2006).

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To

> show that an error was fundamental, a defendant must establish prejudice — that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (internal citations, quotation marks, and brackets omitted).

Our Supreme Court has held that "[e]very criminal jury must be instructed as to its right to return, and the conditions upon which it should render, a verdict of not guilty." *State v. Chapman*, 359 N.C. 328, 380, 611 S.E.2d 794, 831 (2005) (citation and quotation marks omitted); *see also State v. McArthur*, 186 N.C. App. 373, 380, 651 S.E.2d 256, 260 (2007). Furthermore, "[i]t is well established that the trial court's charge to the jury must be construed contextually and isolated portions of it will not be held prejudicial error when the charge as a whole is correct." *McHone*, 174 N.C. App. at 294, 620 S.E.2d at 907 (citation and quotation marks omitted).

In order to fully understand Defendant's argument on this issue, it is necessary to quote in full the trial court's instructions on first-degree murder with regard to the killing of Frink:

> The defendant has been charged with the

first degree murder of Darnell Antonio Frink. Under the law and the evidence in this case it is your duty to return a verdict of either guilty of first degree murder or not guilty. You may find the defendant guilty of first degree murder on either the basis of malice, premeditation and deliberation or under the first degree felony murder rule, or on the basis of lying in wait, or any combination of those three.

First degree murder on the basis of malice, premeditation and deliberation is the intentional and unlawful killing of a human being with malice and with premeditation and deliberation.

First degree murder under the first degree felony murder rule is the killing of a human being in the perpetration of an assault with a deadly weapon with intent to kill inflicting serious injury.

For you to find the defendant guilty of first degree murder on the basis of malice, premeditation and deliberation, the State must prove five things beyond a reasonable doubt.

First, that the defendant intentionally and with malice killed the victim with a deadly weapon. Malice means not only hatred, ill will or spite, as is ordinarily understood, to be sure that is malice, but it also means that condition of the mind that prompts a person to take the life of another intentionally or to intentionally inflict a wound with a deadly weapon upon another which proximately results in his death without just cause, excuse or justification.

If the State proves beyond a reasonable doubt that the defendant intentionally killed the victim with a deadly weapon or intentionally inflicted a wound upon the victim with a deadly weapon that proximately caused his death, you may infer, first, that

the killing was unlawful and, second, that it was done with malice, but you are not compelled to do so. You may consider the inference along with all of the facts and circumstances in determining whether the killing was unlawful and whether it was done with malice. A firearm is a deadly weapon.

Second, the State must prove that the defendant's act was a proximate cause of the victim's death. A proximate cause is a real cause, a cause without which the victim's death would not have occurred.

Third, that the defendant intended to kill the victim. Intent is a mental attitude seldom provable by direct evidence, it must be ordinarily be (sic) proved by circumstances from which it may be inferred. An intent to kill may be inferred from the nature of the assault, the manner in which it was made, the conduct of the parties and other relevant circumstances.

If the defendant intended to harm one person but instead harmed a different person, the legal effect would be the same as if the defendant had harmed the intended victim. If the killing of the intended person would be with malice, then the killing of the different person would also be with malice.

Fourth, that the defendant acted after premeditation; that is, that he formed the intent to kill the victim over some period of time, however short, before he acted.

And, fifth, that the defendant acted with deliberation, which means that he acted while he was in a cool state of mind, which does not mean there had to be a total absence of passion or emotion. If the intent to kill was formed with a fixed purpose, not under the influence of some suddenly aroused violent passion, it is immaterial that the defendant was in a state of passion or excited when the intent was

carried into effect.

Neither premeditation nor deliberation is usually susceptible of direct proof. It may be proved by proof of circumstances from which they may be inferred, such as lack of provocation by the victim, conduct of the defendant before, during and after the killing, use of grossly excessive force, brutal or vicious circumstances of the killing or the manner in which or means by which the killing was done.

I further charge you that for you to find the defendant guilty of first degree murder under the first degree felony murder rule, the State must prove three things beyond a reasonable doubt:

First, that the defendant committed the offense of assault with a deadly weapon with intent to kill inflicting serious injury.

I've read this before, but I'm going to go back over it one more time, the elements for assault with a deadly weapon with intent to kill inflicting serious injury are:

First, that the defendant assaulted the victim by intentionally, without justification or excuse, discharging a firearm into a group of people.

Second, that the defendant used a deadly weapon; a firearm is a deadly weapon.

Third, the State must prove the defendant had a specific intent to kill the victim. I remind you, I've already given the instruction twice as to transferred intent, again, that instruction applies as to intent.

And, fourth, that the defendant inflicted a serious injury.

Second, that while committing assault with a

deadly weapon with intent to kill inflicting serious injury, the defendant killed the victim with a deadly weapon.

Third, that the defendant's act was a proximate cause of the victim's death. A proximate cause is a real cause, a cause without which the victim's death would not have occurred.

The defendant has also been accused of first degree murder perpetrated while lying in wait. For you to find the defendant guilty of this offense, the State must prove three things beyond a reasonable doubt:

First, that the defendant lay in wait for the victim; that is, he waited and watched for the victim in ambush for a private attack on him. It is not necessary that he be actually concealed in order to lie in wait. If one places himself in a position to make a private attack upon his victim and assails him at the time the victim does not know of the assassin's presence, or if he does know, is not aware of his purpose to kill him, the killing constitutes a murder perpetrated by lying in wait. One who lays in wait does not lose his status because he is not concealed at the time he shoots his victim. The fact that he reveals himself or the victim discovers his presence does not permit the murder from being perpetrated by lying in wait. Indeed a person may lie in wait in a crowd as well as being — excuse me, as well as behind a log or a hedge.

Second, that the defendant intentionally assaulted the victim.

And, third, that the defendant's act was a proximate cause of the victim's death. A proximate cause is a real cause, a cause without which the victim's death would not have occurred.

If you find from the evidence beyond a

> reasonable doubt that on or about the alleged date the defendant assaulted the victim while lying in wait for him and that the defendant's act proximately caused the victim's death, it would be your duty to return a verdict of guilty of first degree murder.
>
> *If you do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.*

(Emphasis added.)

As quoted above, at the conclusion of the first-degree murder instruction and immediately following the portion of the instruction addressing the theory of lying in wait — which was the third and final theory submitted to the jury regarding this charge — the trial court ended the instruction by giving the following mandate:

> If you do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.

Defendant asserts that the jury could have construed this not guilty mandate as applying solely to the theory of lying in wait as opposed to applying to the overall charge of first-degree murder as to Frink.

Our Supreme Court addressed the sufficiency of a final not guilty mandate in *Chapman*. In that case, the defendant wounded one passenger of a car and killed another when he fired his rifle into the victims' car from his own vehicle while both

vehicles were traveling on the highway. *Chapman*, 359 N.C. at 337-38, 611 S.E.2d at 804-05. The defendant was charged with first-degree murder based on three separate theories — premeditation and deliberation, felony murder based upon attempted first-degree murder, and felony murder based upon discharging a firearm into occupied property. *Id*. at 380, 611 S.E.2d at 831. The defendant claimed that he was entitled to a new trial because the trial court failed to provide a not guilty mandate as to the theory of felony murder based upon attempted first-degree murder. *Id*. at 380, 611 S.E.2d at 830-31.

The Supreme Court acknowledged that the trial court did not instruct the jury that it was their duty to return a verdict of not guilty if the State failed to establish felony murder based upon attempted first-degree murder. However, the Court observed that

> [a]t the conclusion of the trial court's mandate on all three theories of first-degree murder, the trial judge instructed the jurors as follows: "If you do not find the defendant guilty of first-degree murder on the basis of malice, premeditation and deliberation and if you do not find the defendant guilty of first-degree murder under the felony murder rule, it would be your duty to return a verdict of not guilty."

*Id*. In light of the presence of this final mandate at the conclusion of the trial court's overall instructions on the charge of first-degree murder, the Supreme Court concluded that

the absence of a not guilty mandate as to one of the three theories submitted did not constitute error. *Id.*

> Because defendant confuses the trial court's instructions on the three separate theories of first-degree murder with instructions on first-degree murder itself, and because the trial court gave a proper mandate at the closure of the first-degree murder instruction, we determine that the trial court instructed the jury that it could find defendant not guilty of first-degree murder. Accordingly, this assignment of error is overruled.

*Id.*

In *McHone*, upon which Defendant primarily relies in his argument on this issue, the defendant was convicted of robbery with a dangerous weapon and first-degree murder on theories of both premeditation and deliberation and felony murder. *McHone*, 174 N.C. App. at 291, 620 S.E.2d at 905-06. The defendant argued on appeal that the trial court committed plain error by (1) failing to include the option of not guilty of first-degree murder in its final mandate to the jury; and (2) omitting the not guilty option from the verdict sheet for that offense despite including a not guilty option on the verdict sheet for the robbery with a dangerous weapon charge. *Id.*

In our analysis regarding this issue, we set out three factors that must be weighed in determining whether the failure to give an appropriate not guilty mandate rises to the level of plain error.

We first consider the jury instructions on murder in their entirety in determining whether the failure to provide a not guilty mandate constitutes plain error. . . . The instruction, then, in the absence of a final not guilty mandate, essentially pitted one theory of first degree murder against the other, and *impermissibly suggested* that the jury should find that the killing was perpetrated by defendant on the basis of at least one of the theories. Telling the jury "not to return a verdict of guilty" as to each theory of first degree murder does not comport with the necessity of instructing the jury that it *must or would* return a verdict of not guilty should they completely reject the conclusion that defendant committed first degree murder.

*McHone*, 174 N.C. App. at 297, 620 S.E.2d at 909 (internal

brackets omitted).

After considering the not guilty mandate, this Court next

considered the composition of the verdict sheet submitted to the

jury:

Secondly, we consider the content and form of the first degree murder verdict sheet in determining whether the failure to provide a not guilty mandate constitutes plain error. Here, the trial court initially informed the jury that it was their "duty to return one of the following verdicts: guilty of first-degree murder or not guilty." However, the verdict sheet itself did not provide a space or option of "not guilty." And while the content and form of the verdict sheet did not compel the jury to return a verdict of guilty insofar as it stated "if" it found defendant guilty of first degree murder, we repeat our observation that it failed to afford exactly that which the court initially informed the jury it would be authorized to return — a not guilty verdict.

*Id.* at 297-98, 620 S.E.2d at 909.

Finally, we stated the need to compare the challenged instruction to the instructions given for other charged offenses:

> Thirdly, we consider the instructions and verdict sheet for the armed robbery/larceny offenses in determining whether the failure to provide a not guilty final mandate for the murder charge constitutes plain error. As to these taking offenses, the trial court judge *did* provide a not guilty mandate. After instructing the jury that it must consider the offense of larceny should they reject the armed robbery, the court properly charged the jury, "If you do not so find or if you have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty as to that charge." Rather than help correct the failure to provide a similar not guilty mandate with respect to the first degree murder charge, the presence of a not guilty final mandate as to the taking offenses likely *reinforced* the suggestion that the jury should return a verdict of first degree murder based upon premeditation and deliberation and/or felony murder.[2] Likewise,

---

[2] "The versions of *McHone* available online through Westlaw and LexisNexis contain the full sentence quoted above. The South Eastern Reporter, 2d Series also contains this full sentence. The slip opinion available online also contains this full sentence. *State v. McHone,* 620 S.E.2d at 909. However, the subject of the sentence is missing from the hard copy of the N.C. Court of Appeals Reports. The N.C. Court of Appeals Reports has only the following incomplete sentence: 'Rather than help correct the failure to provide a similar not guilty mandate with respect to the taking offenses likely *reinforced* the suggestion that the jury should return a verdict of first degree murder based upon premeditation and deliberation and/or felony murder.' *McHone,* 174 N.C.App. at 298, 620 S.E.2d 903."

> the content and form of the verdict sheet on the taking offenses, which *did* afford a space for a not guilty verdict, also likely *reinforced* the suggestion that defendant must have been guilty of first degree murder on some basis . . . .

*Id.* at 298, 620 S.E.2d at 909.

This Court has addressed this issue in several cases since *McHone* was decided. In *State v. Wright*, 210 N.C. App. 697, 709 S.E.2d 471, *disc. review denied*, 365 N.C. 332, 717 S.E.2d 394 (2011), the defendant was charged with assault with a deadly weapon with intent to kill inflicting serious injury and first-degree burglary. *Id.* at 699, 709 S.E.2d at 473. During the final mandate on the charge of first-degree burglary, the trial court instructed the jury as follows: "If you do not so find or have a reasonable doubt as to one or more of these things, *you will not return a verdict of guilty of first-degree burglary*." *Id.* at 704, 709 S.E.2d at 476. We determined that this final not guilty mandate was insufficient, reasoning that "the trial court failed to add at the end of the mandate that 'it would be your duty to return a verdict of not guilty.' We have held that the failure to give the final not guilty mandate constitutes error." *Id.*

However, applying *McHone*, we next examined the verdict sheet in order to determine whether the absence of the final not

---

*Gosnell*, __ N.C. App. at __, n. 1, 750 S.E.2d at 596, n. 1.

guilty mandate constituted plain error.

> In *McHone,* this Court's plain error analysis centered upon the fact that the trial court *impermissibly suggested* that the defendant must have been guilty of first degree murder on some basis. This Court concluded that the jury instructions in that case constituted plain error. This conclusion was based not only on the importance of the jury receiving a not guilty mandate from the presiding judge, *but also on the form and content of the particular verdict sheets utilized in this case.*

*Id.* at 706, 709 S.E.2d at 477 (internal citations and quotation marks omitted).

Upon inspection of the verdict sheet for the first-degree burglary charge, we determined that the not guilty option had been included therein.

> In the instant case, there was nothing that would support the proposition that the trial court impermissibly suggested that defendant must be guilty of first-degree burglary. The trial court gave the jury a choice of returning a verdict of guilty of first-degree burglary or not returning a verdict of guilty of first-degree burglary if they had a reasonable doubt as to one or more of the elements of the crime. There were no alternative theories that the jury could consider or lesser-included offenses. The verdict sheet for first-degree burglary provided a space for the jury to check "Guilty of First Degree Burglary" or "Not Guilty." Likewise, the verdict sheet for the other offense in this case also included a space for a verdict of guilty or not guilty.

> While it was error for the trial court

> to fail to deliver the final not guilty mandate, this error does not rise to the level of plain error.

*Id*. at 706, 709 S.E.2d at 477.

In *State v. Gosnell*, __ N.C. App. __, 750 S.E.2d 593 (2013), the trial court instructed the jury on two theories as to which it could find the defendant guilty of first-degree murder — premeditation and deliberation and lying in wait. While its instructions on the lying in wait theory contained a not guilty mandate, no such mandate was given in the portion of the jury instructions relating to the theory of premeditation and deliberation. *Id.* at __, 750 S.E.2d at 595.

In conducting a plain error review, we applied the three-factor test set forth in *McHone* and concluded that

> [t]he verdict sheet provided a space for a "not guilty" verdict, and the trial court's instructions on second-degree murder and the theory of lying in wait comported with the requirement in *McHone*. The trial court did not commit plain error in failing to instruct that the jury would or must return a "not guilty" verdict if it did not conclude that Defendant committed first-degree murder on the basis of premeditation and deliberation.

*Id*. at __, 750 S.E.2d at 596.

In *State v. Jenkins*, 189 N.C. App. 502, 658 S.E.2d 309 (2008), the defendant was charged both with assault with a deadly weapon inflicting serious injury and assault inflicting serious bodily injury. *Id*. at 503, 658 S.E.2d at 310. While

the verdict sheet did contain a not guilty option for the charge of assault inflicting serious bodily injury, it failed to include a not guilty option for the charge of assault with a deadly weapon inflicting serious injury. *Id.* at 504-05, 658 S.E.2d at 311. We held that the defendant was entitled to a new trial because the trial court's not guilty mandate in its jury instructions was "not clear enough to support a verdict sheet that omits a 'not guilty' option . . . ." *Id.* at 507, 658 S.E.2d at 313.

In the present case, the trial court did issue a not guilty mandate at the conclusion of the instruction on first-degree murder as to Frink, stating the following:

> If you do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.

While the better practice would have been for the trial court to make clear to the jury that its final not guilty mandate applied to all three theories of first-degree murder, this — by itself — is not sufficient to establish plain error. Instead we must examine the second and third factors of the *McHone* test.

With regard to the second factor, we are unable to identify any error in the verdict sheet regarding the first-degree murder charge as to Frink. This portion of the verdict sheet stated as

follows:

       \_\_\_\_ 1. GUILTY of FIRST DEGREE MURDER of Darnell Antonio
            Frink

            IF YOU ANSWERED "YES," IS IT:

            A. On the basis of malice, premeditation and
            deliberation?

            ANSWER:_____

            B. On the basis of the first degree felony murder
            rule?

            ANSWER:_____

            C. On the basis of lying in wait?

            ANSWER:_____

    OR

       \_\_\_\_ 2. NOT GUILTY

We are satisfied that this portion of the verdict sheet clearly informed the jury of its option of returning a not guilty verdict regarding this charge. Indeed, Defendant does not contend otherwise.

We next turn to the third factor enumerated in *McHone*. It is particularly appropriate to compare the not guilty mandate regarding the first-degree murder charge as to Frink with the analogous mandate regarding the first-degree murder charge as to Jones. This is so because not only were both instructions for the offense of first-degree murder but, in addition, both charges involved more than one theory of guilt upon which

Defendant could be convicted.[3]  The instruction on the first-degree murder charge as to Jones — with the portions containing a not guilty mandate italicized — stated in pertinent part as follows:

> The defendant has been charged with the first degree murder of Rasheed Delamez Jones.
>
> Under the law and the evidence of this case it is your duty to return one of the following verdicts, either guilty of first degree murder or not guilty.
>
> You may find the defendant guilty of first degree murder either on the basis of malice, premeditation and deliberation or under the first degree felony murder rule, or both.
>
> First degree murder on the basis of malice, premeditation and deliberation is the intentional and unlawful killing of a human being with malice and premeditation and deliberation.
>
> First degree murder under the first degree felony murder rule is the killing of a human being in the perpetration of first degree kidnapping.
>
> For you to find the defendant guilty of first degree murder on the basis of malice premeditation and deliberation, the State must prove five things beyond a reasonable doubt:
>
> First, that the defendant intentionally and with malice killed the victim with a deadly weapon.  Malice means not only hatred, ill

---

[3] With regard to both murder charges, the jury was instructed on theories of premeditation and deliberation and felony murder. However, as noted above, the jury was also instructed on a theory of lying in wait as to the death of Frink.

will or spite, as it is ordinarily understood, to be sure that is malice, but it also means that condition of mind that prompts a person to take the life of another intentionally or to intentionally inflict a wound with a deadly weapon upon another which proximately results in his death without just cause, excuse or justification.

If the State proves beyond a reasonable doubt that the defendant intentionally killed the victim with a deadly weapon or intentionally inflicted a wound upon the victim with a deadly weapon that proximately caused his death, you may infer first that the killing was unlawful and, second, that it was done with malice, but you are not compelled to do so. You may consider the inference along with all other facts and circumstances in determining whether the killing was unlawful and whether it was done with malice. A firearm is a deadly weapon.

Second, the State must prove the defendant's act was a proximate cause of the victim's death. A proximate cause is a real cause, a cause without which the victim's death would not have occurred.

Third, that the defendant intended to kill the victim. Intent is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred. An intent to kill may be inferred from the nature of the assault, the manner in which it was made, the conduct of the parties and other relevant circumstances.

Fourth, that the defendant acted after premeditation; that is, that he formed the intent to kill the victim over some period of time, however short, before he acted.

And, fifth, that the defendant acted with deliberation, which means he acted while he was in a cool state of mind, this does not

mean there had to be a total absence of passion or emotion. If the intent to kill was formed with a fixed purpose, not under the influence of some suddenly aroused violent passion, it is immaterial that the defendant was in a state of passion or excited when the intent was carried into effect.

Neither premeditation nor deliberation is usually susceptible of direct proof, it may be proved by proof of circumstances from which they may be inferred such as the lack of provocation by the victim, the conduct of the defendant before, during and after the killing, use of gross excessive force, brutal or vicious circumstances of the killing, or the manner in which or means by which the killing was done.

I further charge you that for you to find the defendant guilty of first degree murder under the first degree felony murder rule, the State must prove four things beyond a reasonable doubt:

First, that the defendant committed first degree kidnapping. I remind you the elements of first degree kidnapping are as follows:

. . . .

If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant acted with malice, killed the victim with a deadly weapon, thereby proximately causing the victim's death, that the defendant intended to kill the victim and that the defendant acted after premeditation and with deliberation, it would be your duty to return a verdict of guilty of first degree murder on the basis of malice, premeditation and deliberation.

*If you do not so find or have a reasonable doubt as to one or more of these things, you would not return a verdict of guilty of first degree murder on the basis of malice, premeditation and deliberation.*

Whether or not you find the defendant guilty of first degree murder on the basis of malice, premeditation and deliberation, you will also consider whether he is guilty of first degree murder under the first degree felony murder rule.

If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant unlawfully removed a person from one place to another and that the person had not reached his sixteenth birthday and his parent or guardian did not consent to his removal and that this was done for the purpose of facilitating the defendant's commission for (sic) the murder of Rasheed Delamez Jones, and that this removal was a separate, complete act, independent of and apart from the murder, and that the person removed was not released by the defendant in a safe place or was seriously injured and that while committing first degree kidnapping, the defendant killed the victim and that the defendant's act was a proximate cause of the victim's death, and that the defendant committed first degree kidnapping with the use of a deadly weapon, it would be your duty to return a verdict of guilty of first degree murder under the felony murder rule.

*If you do not so find or have a reasonable doubt as to one or more of these things, you would not return a verdict of guilty, excuse me, you would return a verdict of not guilty.*

*Let me make sure it's absolutely clear on that language. Again under — for Mr. Frink, you will have three choices under first degree murder. You will go through and*

> *consider each of those three bases for first degree murder, consider all three. You will only render not guilty if you find that none of those three exist.*
>
> *As to Mr. Jones, the same situation, first degree murder there are two bases, you will consider both of those bases, only if you found (sic) that neither of those bases exist, then you go to not guilty.*

(Emphasis added.)

Initially, we note that Defendant has not challenged on appeal the trial court's not guilty mandate contained in its first-degree murder instruction as to Jones. In comparing the first-degree murder instructions as to Frink and Jones, several observations can be made. First, the final not guilty mandate in the Frink instruction is worded more appropriately than that in the Jones instruction. The former informed the jury of its "duty" to return a verdict of not guilty while the latter merely stated that the jury "would" return a not guilty verdict if the State failed to prove Defendant's guilt beyond a reasonable doubt.

Second, in the Jones instruction, the trial court gave a not guilty mandate both after its instruction on the theory of premeditation and deliberation and then again at the conclusion of the overall first-degree murder charge. Conversely, as discussed above, with regard to the Frink charge, the trial court only gave a not guilty mandate at the conclusion of the

overall first-degree murder instruction rather than after each specific theory of guilt.

Finally, at the end of the Jones first-degree murder charge, the trial court referenced the Frink first-degree murder charge, stating the following:

> Let me make sure it's absolutely clear on that language. Again under — for Mr. Frink, you will have three choices under first degree murder. You will go through and consider each of those three bases for first degree murder, consider all three. You will only render not guilty if you find that none of those three exist.

We acknowledge that this reference by the trial court to the jury's obligation regarding the Frink first-degree murder charge was not worded with perfect clarity and that it would have been more appropriate for the trial court to emphasize the jury's *duty* to return a verdict of not guilty in the event that it found the State had failed to prove Defendant's guilt beyond a reasonable doubt. Nevertheless, we are satisfied that any confusion that may have arisen stemming from the trial court's instructions was remedied by the verdict sheet, which — as discussed above — clearly provided an option of not guilty.

Even assuming, without deciding, that the trial court's instructions relating to this charge were not free from error, based on our careful review of the jury instructions in their entirety and the caselaw discussed above, we conclude that

Defendant has failed to show plain error. Therefore, Defendant's argument on this issue is overruled.

## III. Lying in Wait

Defendant also contends that the trial court erred by instructing the jury — over the objection of his trial counsel — on first-degree murder based upon a theory of lying in wait with regard to the death of Frink.

> Preserved legal error is reviewed under the harmless error standard of review. . . . North Carolina harmless error review requires the defendant to bear the burden of showing prejudice. In such cases the defendant must show a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.

*Lawrence*, 365 N.C. at 512-13, 723 S.E.2d at 330-31 (internal citations and quotation marks omitted).

In the present case, Defendant was convicted of first-degree murder as to Frink based upon three separate theories — premeditation and deliberation, felony murder, and lying in wait. On appeal, Defendant has only challenged the sufficiency of the evidence with regard to the lying in wait theory.

A similar issue was presented in *Gosnell*. In that case, the defendant was convicted of first-degree murder both on a theory of lying in wait and a theory of premeditation and deliberation. *Gosnell*, __ N.C. App. at __, 750 S.E.2d at 598.

However, on appeal, he argued only that it was error for the trial court to have submitted the theory of lying in wait to the jury. *Id*. at __, 750 S.E.2d at 596. This Court held that because the jury had separately convicted him based on premeditation and deliberation, "[e]ven assuming Defendant can show error on this basis, Defendant cannot show prejudice resulting from the error because there is no possibility that, had the error in question not been committed, a different result would have been reached at trial." *Id*. at __, 750 S.E.2d at 598.

Therefore, even assuming, without deciding, that the jury instruction on lying in wait was erroneous, such error would not have affected Defendant's conviction of first-degree murder as to Frink on the theories of premeditation and deliberation and felony murder. Consequently, Defendant has failed to demonstrate how a different result would have been reached at trial had the challenged theory not been submitted to the jury.

**IV. Failure to Adequately Individualize Charges**

Defendant next makes a series of arguments in which he contends that the trial court erred by failing to instruct the jury to consider each offense individually. Because Defendant did not object to any of these instructions at trial, we again apply a plain error standard of review. *See Lawrence*, 365 N.C.

at 518, 723 S.E.2d at 334.  We address each of his specific arguments in turn.

First, Defendant asserts that "[f]or the assault with a deadly weapon with intent to kill inflicting serious injury charges for two victims, the court named both victims, but then gave an instruction as to 'the victim.'"  Based on our Supreme Court's holding in *State v. Huff*, 325 N.C. 1, 381 S.E.2d 635, Defendant's argument lacks merit.

In *Huff*, the defendant was being tried on two separate counts of first-degree murder.  *Id*. at 51-54, 381 S.E.2d at 664-66.  On appeal, he cited as plain error various instructions that referred to a single victim, a single case, and a single decision to be made.  *Id*.  He contended that these references were misleading and could have led jurors to believe that they were permitted to make a joint determination of guilt.  *Id*.  He argued that the trial judge had (1) periodically referred to a single "victim" (although there were *two* victims); (2) stated that the State had the burden of "proving the case" (although there were *two* cases for the State to prove); and (3) instructed the jury that the "decision in the case must be unanimous" (although the jury was required to make decisions in each of *two* cases).  *Id*.  The defendant also contended that the trial court erred by giving a single joint instruction on the affirmative defense of insanity.  *Id*.

In rejecting the defendant's argument, the Supreme Court explained that although "[t]he trial judge did not specifically instruct the jurors to consider each charge separately[,] . . . the instructions which he did give achieved that result; taken as a whole, they make clear that in the determination of defendant's guilt or innocence the jury was to consider each charge separately."  *Id*. at 52, 381 S.E.2d at 664.  The Court held that if a trial court identifies each victim for each separate count of the same charged offense, it is not plain error for the trial court to then describe the elements of the offense only once:

> The trial judge proceeded to the instruction on first-degree murder.  He instructed on the first element, an intentional killing by the defendant of the victim with malice. After giving the general instruction which applied to both cases, [the trial judge] specifically referred to the Gail Strickland case and gave the specific instruction which applied only in the shooting death . . . He said, "In your consideration of the case in which Gail Strickland is the victim . . . ." By referring to the Gail Strickland case by name, he distinguished it from the case in which Crigger Huff was the victim and indicated that the jury should consider the evidence of the Gail Strickland case separately from the evidence in the Crigger Huff case.

*Id*. at 52-53, 381 S.E.2d at 665.  The Supreme Court in *Huff* further held that

> [t]he format of the verdict sheet and the trial judge's instruction describing it are

> additional evidence that the instructions as a whole made clear that the jury was to consider each charge separately. The record on appeal shows that the verdict form lists each charge separately and states the permitted verdicts under each charge. This separate treatment clearly requires that the two charges be addressed separately.

*Id*. at 54, 381 S.E.2d at 665.

In the present case, as in *Huff*, all charges against Defendant were listed separately on separate verdict sheets and each sheet set forth all permissible verdicts under each charge. In addition, the trial court referred to Waddell and Inman as separate victims of two different counts of assault with a deadly weapon with intent to kill inflicting serious injury:

> The defendant has been charged with two counts of assault with a deadly weapon with intent to kill inflicting serious injury in regards to William Inman and Antwan Waddell. For you to find the defendant guilty of those two, offenses, the State must prove four things beyond a reasonable doubt[.]

We believe that the trial court's instructions — coupled with the verdict sheets — made clear to the jury that there were two separate counts and two separate victims regarding this charge.

While Defendant also contends the trial court failed to separately instruct on the two counts of conspiracy to commit first-degree murder, the trial court likewise informed the jury that there were two counts for its consideration as to that offense by stating the following: "The defendant has been

charged with conspiracy to commit murder of Darnell Antonio Frink and Rasheed Delamez Jones, two counts as to that offense." Furthermore, the verdict sheets made clear that there were two separate counts regarding the conspiracy charge as each count was listed on a separate verdict sheet. Consequently, based on *Huff*, we cannot say that this instruction constituted plain error.

In his brief, Defendant also contends that "the [trial] court combined the two charges of felon in possession [of a firearm] without specifying the dates of the offenses or instructing the jurors that guilt for one of the offenses did not mean guilt for the other offense." Our review of the trial transcript, however, reveals that the trial court did specifically indicate the dates of the offenses and make clear that there were two separate counts of that offense by stating that "[t]he defendant has been charged with two counts of possession of a firearm by a felon . . . and the two alleged dates, the first being September 21st, 2007 and the second being November 19th, 2007." Furthermore, the jury was given two separate verdict sheets reflecting the two counts of this offense and the respective dates of each count was clearly contained on each verdict sheet. Therefore, Defendant has also failed to show plain error with regard to this instruction.

Defendant next asserts that with regard to the felony murder instruction regarding the death of Frink, the jury was not informed which assault could form the basis for the felony murder charge. However, this error does not rise to the level of plain error. *See State v. Coleman*, 161 N.C. App. 224, 234-35, 587 S.E.2d 889, 896 (2003) ("[T]he trial court's instructions to the jury were ambiguous as to what underlying felony formed the basis of [the] felony murder charge. . . . Only one underlying felony is required to support a felony murder conviction, and in this case, the jury convicted defendant of four separate felonies which could have served as the underlying felony. . . . [B]ecause the instructions in the instant case allowed the jury to convict defendant of a single wrong by alternative means the instructions were not fatally ambiguous." (internal citation and ellipses omitted)). Therefore, based on *Coleman*, Defendant has also failed to establish plain error with regard to this instruction.

Finally, Defendant briefly argues that "[t]he [trial] court gave the mandate for the Jones murder, but gave no mandate for the underlying felony, kidnapping." However, our review of the trial transcript reveals that the trial court did, in fact, expressly provide such a mandate. Therefore, this argument fails as well.

**V. Felony Murder**

Defendant's final argument is that the trial court committed plain error by instructing the jury on the theory of felony murder regarding the death of Jones because there was insufficient evidence of the predicate felonies, first-degree kidnapping and conspiracy to commit first-degree kidnapping.

However, Defendant was convicted of first-degree murder as to the death of Jones based not only on a theory of felony murder but also based on a theory of premeditation and deliberation. Therefore, as discussed above in connection with Defendant's challenge to the lying in wait instruction as to the death of Frink, any error in the trial court's decision to instruct the jury on felony murder would not have affected his conviction for the first-degree murder of Jones on a theory of premeditation and deliberation. *See Gosnell*, __ N.C. App. at __, 750 S.E.2d at 598. Thus, this argument is overruled.

## Conclusion

For the reasons stated above, we conclude that Defendant received a fair trial free from prejudicial error.

NO PREJUDICIAL ERROR.

Judges ELMORE and McCULLOUGH concur.