McGEE, Chief Judge.
*126 Jesus Calderon ("Defendant Calderon") and Christopher Lashon Miller, Jr. ("Defendant Miller") (collectively "Defendants") appeal from judgments entered upon jury verdicts finding Defendants each guilty of four counts of robbery with a firearm and two counts of attempted robbery with a firearm, and finding Defendant Calderon guilty of one count of possession of a firearm by a felon. We find no prejudicial error.
I. Facts and Procedural History
The evidence at trial tended to show that Christopher Moore ("Mr. Moore") and Defendants were "chilling, smoking [marijuana], and drinking" at an apartment complex in Shelby, North Carolina, on 5 June 2013. They ran out of marijuana and decided to walk to the neighboring Ramblewood Apartments complex ("Ramblewood") "to go rob somebody for some weed." Defendant Calderon, armed with a twenty-two-caliber pistol, and Defendant Miller, armed with a nine-millimeter pistol, walked with Mr. Moore to Bobbie Yates's apartment ("the apartment") in Ramblewood to steal marijuana, since Mr. Moore said he had previously purchased marijuana from Bobbie Yates and believed there would be marijuana in the apartment. When Defendants and Mr. Moore approached Ramblewood, they encountered Bobby Hamrick ("Mr. Hamrick"), who was standing outside the apartment and who told them: "They're having a card game. There ain't no weed up there." When Defendants and Mr. Moore learned from Mr. Hamrick that there was an ongoing card game with "such a[sic] amount of money" on the table, they left Ramblewood *127 and returned to the apartment complex, where they retrieved a shotgun for Mr. Moore. Defendants and Mr. Moore, all now armed, returned to the apartment in Ramblewood.
There were a number of people in the apartment, including Bobbie Yates, Cordell Yates, Mr. Hamrick, Terrance Norris ("Mr. Norris"), Anthony Charles ("Mr. Charles"), Troy Vinson ("Mr. Vinson"), Terris Parker ("Mr. Parker"), and Jackie Allen ("Mr. Allen"), as well as the ten-year-old son of Mr. Charles. Bobbie Yates, Cordell Yates, Mr. Charles, Mr. Hamrick, and Mr. Vinson were seated around the kitchen table playing poker, and each of the men had money on the table. Others, including Mr. Charles's ten-year-old son, were seated on one part of a sectional couch in the adjoining living room, and Mr. Allen, who had been drinking alcohol earlier in the evening, was either "passed out" or asleep on another part of the couch. The apartment had an open floor plan, so there was no wall or barrier separating the kitchen from the living room.
*402 As the card game continued, there was a knock on the front door and when the door was opened, Defendants and Mr. Moore "rushed in," all with weapons in hand. As they pointed their weapons at the people in the apartment, one of them announced: "Where it at? You know what time it is." Several of the people in the apartment testified that they knew or recognized Defendants and Mr. Moore.
Once Defendants and Mr. Moore entered the apartment, Defendants stood with their weapons raised and pointed at the people in the apartment while Mr. Moore grabbed the $200.00 to $300.00 off the kitchen table and searched through some of the people's pockets, and Mr. Hamrick's socks, for more money. Mr. Moore held his shotgun in his left hand as he proceeded to take the money off the table and from the people in the apartment and put it in his pocket.
One of the people in the living room testified that, when Mr. Moore approached Mr. Parker, Mr. Parker refused to give Mr. Moore his money, stating: "If you all motherf---ers want my money, you got to go in my pocket and get it yourself because I ain't going to give you my money out of my pocket. You got to go in there and get it yourself." Mr. Moore then pressed the barrel of his shotgun to Mr. Parker's forehead, said, "Motherf---er, I kill you," and reached inside Mr. Parker's pockets and took his money. Mr. Charles, whose attention was on the living room where his son was located throughout the robbery, saw Mr. Moore search through Mr. Allen's pockets as he lay on the couch, either "passed out" or asleep, although no witness saw Mr. Moore take any money from Mr. Allen. The entire robbery lasted between two and four minutes, and *128 after the money was collected, Defendants and Mr. Moore told the people not to leave the apartment for ten minutes "or they was [sic] going to kill whoever came the f--- out." As soon as Defendants and Mr. Moore left the apartment, one of the people in the apartment called the police.
Mr. Moore pleaded guilty to nine counts of armed robbery and agreed to testify at Defendants' trial. Defendants were each indicted on multiple counts of robbery with a dangerous weapon. Defendant Calderon was also indicted on one count of possession of a firearm by a felon. Defendants were tried jointly. At trial, Defendants moved to dismiss the charges at the close of the State's evidence and at the close of all of the evidence. Two counts of robbery with a dangerous weapon were dismissed against each Defendant, and two counts were reduced to attempted robbery with a firearm.
Defendant Calderon was found guilty by a jury of four counts of robbery with a firearm, two counts of attempted robbery with a firearm, and one count of possession of a firearm by a felon, and was sentenced to two consecutive terms of 73 months to 100 months' imprisonment for the robbery and attempted robbery convictions, and to one term of fourteen to twenty-six months' imprisonment for the possession of a firearm by a felon conviction, to begin upon the expiration of the other sentences.
Defendant Miller was found guilty by a jury of four counts of robbery with a firearm and two counts of attempted robbery with a firearm, and was sentenced to two consecutive terms of sixty-four to eighty-nine months' imprisonment. Both Defendant Calderon and Defendant Miller appeal.
II. Not Guilty Mandate in Jury Instructions
Defendant Calderon first contends the trial court erred by failing to provide a "not guilty" mandate to the jury when the court gave its instruction on the offense of robbery with a firearm and on the lesser-included offense of common law robbery. Defendant Calderon asserts that, because the trial court's charge to the jury diverged from the pattern jury instructions and did not expressly instruct the jury on its duty to return a verdict of not guilty if certain conditions were met, he was deprived of his fundamental right to have all permissible verdicts submitted to the jury and thus requires a new trial. We disagree.
"Because [Defendant Calderon] did not object at trial to the omission of the not guilty option from the trial court's final mandate to the jury, we review the trial court's actions for plain error." See State v.
*403 McHone, 174 N.C.App. 289, 294, 620 S.E.2d 903, 907 (2005), supersedeas *129 and disc. review denied, 362 N.C. 368, 628 S.E.2d 9 (2006). "For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial." State v. Lawrence, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012). "To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." Id. (internal quotation marks omitted).
"Every criminal jury must be instructed as to its right to return, and the conditions upon which it should render, a verdict of not guilty." State v. Chapman, 359 N.C. 328, 380, 611 S.E.2d 794, 831 (2005) (internal quotation marks omitted). "Such instruction is generally given during the final mandate after the trial court has instructed the jury as to elements it must find to reach a guilty verdict." Id. "Our Supreme Court has held that the failure of the trial court to provide the option of acquittal or not guilty in its charge to the jury can constitute reversible error." McHone, 174 N.C.App. at 295, 620 S.E.2d at 907. Nonetheless, it has long been recognized that "the trial court's charge to the jury must be construed contextually and isolated portions of it will not be held prejudicial error when the charge as a whole is correct." Id. at 294, 620 S.E.2d at 907 (internal quotation marks omitted).
In the present case, the parties agreed that the trial court would charge the jury in accordance with the North Carolina Pattern Jury Instructions. For the offense of robbery with a firearm, Pattern Jury Instruction 217.20 provides as follows:
The defendant has been charged with robbery with a firearm, which is taking and carrying away the personal property of another from his person or in his presence without his consent by endangering or threatening a person's life with a firearm, the taker knowing that he was not entitled to take the property and intending to deprive another of its use permanently.
For you to find the defendant guilty of this offense, the State must prove seven things beyond a reasonable doubt:
First, that the defendant took property from the person of another or in his presence.
Second, that the defendant carried away the property.
Third, that the person did not voluntarily consent to the taking and carrying away of the property.
*130 Fourth, that the defendant knew he was not entitled to take the property.
Fifth, that at the time of taking the defendant intended to deprive that person of its use permanently.
Sixth, that the defendant had a firearm in his possession at the time he obtained the property (or that it reasonably appeared to the victim that a firearm was being used, in which case you may infer that the said instrument was what the defendant's conduct represented it to be).
And Seventh, that the defendant obtained the property by endangering or threatening the life of [that person] [another person] with the firearm.
If you find from the evidence beyond a reasonable doubt that on or about the alleged date, the defendant had in his possession a firearm and took and carried away property from the person or presence of a person without his voluntary consent by endangering or threatening [his] [another person's] life with the use or threatened use of a firearm, the defendant knowing that he was not entitled to take the property and intending to deprive that person of its use permanently, it would be your duty to return a verdict of guilty. If you do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.
N.C.P.I.-Crim. 217.20 (2003) (emphasis added). For the offense of common law robbery, Pattern Jury Instruction 217.10 provides as follows:
The defendant has been charged with common law robbery, which is taking and carrying away personal property of another from his person or in his presence without his consent by violence or by putting him in fear, and with the intent to deprive him *404 of its use permanently, the taker knowing that he was not entitled to take it.
For you to find the defendant guilty of this offense, the State must prove six things beyond a reasonable doubt:
First, that the defendant took property from the person of another or in his presence.
Second, that the defendant carried away the property.
*131 Third, that the other person did not voluntarily consent to the taking and carrying away of the property.
Fourth, that at that time, the defendant intended to deprive him of its use permanently.
Fifth, that the defendant knew he was not entitled to take the property.
And Sixth, that the taking was by violence or by putting the person in fear.
If you find from the evidence beyond a reasonable doubt that on or about the alleged date, the defendant took and carried away property from the person or the presence of a person without his voluntary consent, by violence or by putting that person in fear, the defendant knowing that he was not entitled to take it and intending at that time to deprive the person of its use permanently, it would be your duty to return a verdict of guilty. If you do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.
N.C.P.I.-Crim. 217.10 (2002) (emphasis added).
In the trial on these matters, the trial court's charge to the jury on the offenses of robbery with a firearm and common law robbery conformed to the pattern jury instructions entirely, with the following exception: the court did not expressly instruct the jury that it was its "duty to return a verdict of not guilty" if it had a reasonable doubt as to one or more of the enumerated elements of robbery with a firearm or common law robbery, respectively. Instead, for the offense of robbery with a firearm, the court ended its charge to the jury with the following instruction: "If you do not so find or have a reasonable doubt as to one or more of these things, then you will not return a verdict of guilty of robbery with a firearm as to that defendant." (Emphasis added.) For the offense of common law robbery, the court ended its charge to the jury with the following instruction: "If you do not so find or have a reasonable doubt as to one or more of these things, then you would not find the defendant guilty of common law robbery. " (Emphasis added.)
In State v. McHone, this Court considered whether the trial court committed plain error by "(1) failing to include the option of not guilty of first-degree murder in its final mandate to the jury; and (2) omitting the not guilty option from the verdict sheet for that offense despite *132 including a not guilty option on the verdict sheet for the robbery with a dangerous weapon charge." State v. Jenrette, --- N.C.App. ----, ----, 763 S.E.2d 404, 412 (2014) (citing McHone, 174 N.C.App. at 291, 620 S.E.2d at 906 ), appeal dismissed and disc. review denied, - -- N.C. ----, 771 S.E.2d 291 (2015). In McHone, this Court concluded that "the trial court failed to instruct the jury on the option of finding [the] defendant not guilty during its final mandate" when it instructed the jury to "not return a verdict of guilty of first-degree murder on the basis of malice, premeditation, and deliberation " and to "not return a verdict of guilty of first-degree murder under the felony murder rule, " rather than instructing the jury that "it would be your duty to return a verdict of not guilty" if the State failed to meet one or more of the elements of first-degree murder under either theory. McHone, 174 N.C.App. at 292-93, 296, 620 S.E.2d at 906, 908. We determined this instruction constituted a failure to give "an appropriate not guilty mandate," see Jenrette, --- N.C.App. at ----, 763 S.E.2d at 412, because the trial court "neither stated that the jury could find defendant not guilty of first degree murder, nor that it was their duty to do so should they conclude the State failed in its burden of proof," McHone, 174 N.C.App. at 296, 620 S.E.2d at 908, and further did not, "as an alternative to a 'not guilty' mandate, instruct the jury to answer 'no' to [that] issue on the verdict sheet should it not find any one or more of the elements of murder missing." *405 Id. at 296, 620 S.E.2d at 908-09. Thus, we concluded that "the trial court's failure to provide a not guilty final mandate constituted error." Id. at 297, 620 S.E.2d at 909.
In order to consider whether such error constituted plain error and required a new trial, this Court identified "three factors that must be weighed in determining whether the failure to give an appropriate not guilty mandate [rose] to the level of plain error." Jenrette, --- N.C.App. at ----, 763 S.E.2d at 412. First, we must consider the challenged jury instructions "in their entirety." McHone, 174 N.C.App. at 297, 620 S.E.2d at 909. Second, we need to "consider the content and form of the ... verdict sheet [for the offense that is the subject of the challenged instruction] in determining whether the failure to provide a not guilty mandate constitutes plain error." Id. Third, we need to consider the instructions and verdict sheet for the other offenses in the case. See id. at 298, 620 S.E.2d at 909.
With respect to the first factor, this Court in McHone determined that, "in the absence of a final not guilty mandate," the challenged instructions "essentially pitted one theory of first degree murder against the other, and impermissibly suggested that the jury should find that the killing was perpetrated by [the] defendant on the basis of at least one *133 of the theories." Id. at 297, 620 S.E.2d at 909. Thus, we concluded that instructing the jury " 'not [to] return a verdict of guilty' as to each theory of first degree murder [did] not comport with the necessity of instructing the jury that it must or would return a verdict of not guilty should they completely reject the conclusion that defendant committed first degree murder." Id. (first alteration in original).
With respect to the second factor, this Court in McHone recognized that the verdict sheet "only provided a space for an answer to 'Guilty of first-degree murder,' " State v. Wright, 210 N.C.App. 697, 705, 709 S.E.2d 471, 476 (citing McHone, 174 N.C.App. at 297, 620 S.E.2d at 909 ), disc. review denied, 365 N.C. 332, 717 S.E.2d 394 (2011), but "the verdict sheet itself did not provide a space or option of 'not guilty.' " McHone, 174 N.C.App. at 298, 620 S.E.2d at 909. Consequently, "while the content and form of the verdict sheet did not compel the jury to return a verdict of guilty insofar as it stated 'if' it found defendant guilty of first degree murder," id., "we repeat[ed] our observation that it failed to afford exactly that which the court initially informed the jury it would be authorized to return-a not guilty verdict." Id.
Finally, with respect to the third factor, this Court in McHone considered the instructions and verdict sheets given to the jury for the other charge in that case, which was armed robbery and its lesser-included offense of larceny. See id. For these offenses, the trial court did provide a not guilty mandate in conformity with the pattern jury instructions, and the verdict sheet did include a space for a not guilty verdict. Id. Thus, we determined that, "[r]ather than help correct the failure to provide a similar not guilty mandate with respect to the first degree murder charge," id., the presence of a not guilty final mandate as to the taking offenses, as well as the content and form of the verdict sheet on the taking offenses, "likely reinforced the suggestion that the jury should return a verdict of first degree murder based upon premeditation and deliberation and/or felony murder." Id. Thus, "based not only on the importance of the jury receiving a not guilty mandate from the presiding judge, but also on the form and content of the particular verdict sheets utilized in this case," id. at 299, 620 S.E.2d at 910 (emphasis added), this Court concluded that "the trial court's inadvertent omission tipped the scales of justice in favor of conviction and impermissibly suggested that the defendant must have been guilty of first degree murder on some basis." Id.
Unlike the alternative theories of first-degree murder that were the subject of the challenged instruction in McHone, which "essentially *134 pitted one theory of first degree murder against the other," id. at 297, 620 S.E.2d at 909, in the present case, "there was nothing that would support the proposition that the trial court impermissibly suggested that [Defendants] must be guilty" of robbery with a firearm or common law robbery. See *406 Wright, 210 N.C.App. at 706, 709 S.E.2d at 477. While the better practice would have been for the trial court to have expressly instructed the jury on the not guilty mandate, each verdict sheet for the four counts of robbery with a firearm for Defendant Calderon and Defendant Miller provided the following options: "Guilty of Robbery With a Firearm ... OR Guilty of Common Law Robbery ... OR Not Guilty." Thus, the verdict sheets for each of the charges, including those for the unchallenged offenses of attempted robbery with a firearm and possession of a firearm by a felon, "clearly informed the jury of its option of returning a not guilty verdict." See Jenrette, --- N.C.App. at ----, 763 S.E.2d at 414. "[W]e are satisfied that any confusion that may have arisen stemming from the trial court's instructions was remedied by the verdict sheet[s], which-as discussed above-clearly provided an option of not guilty" for each charge against Defendants. See id. at ----, 763 S.E.2d at 417. Additionally, since we have determined that the trial court's instruction did not impermissibly suggest that Defendants must be guilty, we also conclude that the other charges, which included not guilty mandates that adhered to the pattern jury instructions, did not reinforce that the jury should return a guilty verdict. Therefore, while it was error for the trial court to fail to deliver the not guilty mandate during its instruction on the offenses of robbery with a firearm and common law robbery, we hold this error does not rise to the level of plain error.
III. Sufficiency of Evidence of Attempted Robbery With A Firearm
Defendants next contend the trial court erred by denying their respective motions to dismiss the charges of attempted robbery with a firearm of Mr. Allen because the evidence was insufficient to support such convictions. Again, we disagree.
"Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." State v. Powell, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Earnhardt, 307 N.C. 62, 66, 296 S.E.2d 649, 652 (1982). "The evidence is to be considered in the light most favorable to the State; the State *135 is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom." Powell, 299 N.C. at 99, 261 S.E.2d at 117. "[C]ontradictions and discrepancies are for the jury to resolve and do not warrant dismissal; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is to be considered by the court in ruling on the motion." Id.
The elements of robbery with a dangerous weapon are: "(1) the unlawful taking or an attempt to take personal property from the person or in the presence of another[;] (2) by use or threatened use of a firearm or other dangerous weapon[;] (3) whereby the life of a person is endangered or threatened." State v. Hill, 365 N.C. 273, 275, 715 S.E.2d 841, 843 (2011), disc. review dismissed, 366 N.C. 583, 739 S.E.2d 842 (2013) ; see also N.C. Gen.Stat. § 14-87(a) (2013). In other words, "[a]rmed robbery requires both an act of possession of a weapon and an act whereby the weapon is used to endanger the life of the victim" and "the use of force must be such as to induce the victim to part with the property." Cf. State v. Dalton, 122 N.C.App. 666, 671, 471 S.E.2d 657, 660-61 (1996) (holding that the trial court erred by denying the defendant's motion to dismiss the charge of robbery with a dangerous weapon where the victim had been asleep on the sofa in her house when the defendant had seen the victim's purse on the floor and removed it from her house because "[t]he taking of the purse occurred while [the victim] was asleep ... [and,] therefore, she could not have known of the presence of the knife and could not have been induced by it to part with her purse"). "[T]he question in an armed robbery case is whether a person's life was in fact endangered or threatened by [the robber's] possession, use[,] or threatened use of a dangerous weapon, not whether *407 the victim was scared or in fear of his life." Hill, 365 N.C. at 279, 715 S.E.2d at 845 (second alteration in original) (emphasis in original omitted).
"Acting in concert means that the defendant is 'present at the scene of the crime' and acts 'together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime.' " State v. Graham, 186 N.C.App. 182, 197, 650 S.E.2d 639, 649 (2007) (quoting State v. Joyner, 297 N.C. 349, 357, 255 S.E.2d 390, 395 (1979) ), disc. review denied and appeal dismissed, 362 N.C. 477, 666 S.E.2d 765 (2008). "Under the theory of acting in concert, if two or more persons join in a purpose to commit a crime, each person is responsible for all unlawful acts committed by the other persons as long as those acts are committed in furtherance of the crime's common purpose." State v. Hill, 182 N.C.App. 88, 92-93, 641 S.E.2d 380, 385 (2007) (citing State v. Erlewine, 328 N.C. 626, 637, 403 S.E.2d 280, 286 (1991) ).
*136 Therefore, in order to consider whether there was sufficient evidence to convict a defendant of committing robbery with a dangerous weapon under a theory of acting in concert, "the State need not present evidence that [the] defendant actually possessed the dangerous weapon." Id. at 93, 641 S.E.2d at 385. "The State must only show that defendant acted in concert to commit robbery and that his co-defendant used the dangerous weapon in pursuance of that common purpose to commit robbery." Id. (internal quotation marks omitted).
"The elements of attempt are an intent to commit the substantive offense and an overt act which goes beyond mere preparation but falls short of the completed offense." State v. Key, 180 N.C.App. 286, 292, 636 S.E.2d 816, 821 (2006) (internal quotation marks omitted), disc. review denied, 361 N.C. 433, 649 S.E.2d 399 (2007). "In order to constitute an attempt, it is essential that the defendant, with the intent of committing the particular crime, should have done some overt act adapted to, approximating, and which in the ordinary and likely course of things would result in the commission thereof." State v. Price, 280 N.C. 154, 158, 184 S.E.2d 866, 869 (1971) (internal quotation marks omitted). "[T]he act must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation." Id. (internal quotation marks omitted). "[A] defendant can stop his criminal plan short of an overt act on his own initiative or because of some outside intervention. However, once a defendant engages in an overt act, the offense [of attempt] is complete[.]" Key, 180 N.C.App. at 292, 636 S.E.2d at 821-22 (first and third alterations in original) (internal quotation marks omitted). While it "need not be the last proximate act to the consummation of the offense attempted to be perpetrated, it must approach sufficiently near to it to stand either as the first or some subsequent step in a direct movement towards the commission of the offense after the preparations are made." Price, 280 N.C. at 158, 184 S.E.2d at 869 (internal quotation marks omitted). "[A]n attempt to rob another person of personal property ... occurs when the defendant, with the requisite intent to rob, does some overt act calculated and designed to bring about the robbery, thereby endangering or threatening the life of a person." Id. at 157-58, 184 S.E.2d at 869 (citation omitted).
In State v. Miller, 344 N.C. 658, 477 S.E.2d 915 (1996), the defendant confessed to killing a man who was sleeping in the driver's seat of a van. See Miller, 344 N.C. at 665, 477 S.E.2d at 920. The defendant also stated that, after he shot the man, he did not take any money from him because the defendant "was scared." Id. On appeal, the defendant argued there was insufficient evidence to uphold his conviction of attempted armed robbery because "the evidence was insufficient to show that his actions *137 advanced beyond a mere preparation to commit robbery." Id. at 667, 477 S.E.2d. at 921. However, the Court had previously determined that " evidence was sufficient to support a conviction for attempted armed robbery where the defendant placed his hand on a pistol and began to withdraw it from a purse with the intent of completing the substantive offense of armed robbery through its use." Id. at 669, 477 S.E.2d. at 922 (citing *408 State v. Powell, 277 N.C. 672, 678-79, 178 S.E.2d 417, 421 (1971) ). Thus, in Miller, although the victim was asleep in the van, the Court concluded that "[t]he evidence clearly show[ed the defendant] had already committed an overt act in furtherance of the crime well before he left the scene ... [o]nce defendant placed his hand on the pistol to withdraw it with the intent of shooting and robbing [the victim]." Id. at 670, 477 S.E.2d at 922. Moreover, "[t]he fact that [the defendant] did not take the money [from the victim was] irrelevant." Id.
Here, Defendants argue there was insufficient evidence to prove that either of them unlawfully attempted to deprive Mr. Allen of personal property or that Mr. Allen's life was threatened or endangered. However, the evidence tended to show that Defendants and Mr. Moore planned to rob Bobbie Yates of marijuana, but that once they were informed there was a poker game going on in the apartment, they retrieved a third weapon and returned to Ramblewood for the purpose of robbing the people present in the apartment. Once Defendants and Mr. Moore entered the apartment, Mr. Moore took the money off the kitchen table where several of the people were playing poker, and proceeded to search their pockets for more money. The robbery lasted between two and four minutes and, during the course of the robbery, Defendants continuously pointed their weapons at the people in the apartment, which had an open floor plan; Defendant Miller had a nine-millimeter pistol, and Defendant Calderon brandished a twenty-two-caliber pistol. After Mr. Moore had taken money from the people seated around the kitchen table, Mr. Moore, with his shotgun in hand, approached Mr. Allen, who was "passed out" or asleep in the living room, as Defendants continued to point their weapons at the people in the apartment. When Defendants and Mr. Moore prepared to leave the apartment, they told the people to remain in the apartment for ten minutes, or else they would kill them.
When viewed in the light most favorable to the State, we conclude that this evidence is sufficient to show that Defendants, acting in concert with Mr. Moore, had the specific intent to deprive Mr. Allen of his personal property by endangering or threatening his life with a dangerous weapon and took overt acts to bring about this result. Although Mr. Moore may not have reached the "last proximate act to the *138 consummation of the offense"-because Mr. Allen was "passed out" or asleep and therefore could not be induced to give up his money due to the threat that Defendants' weapons presented, and because no one saw Mr. Moore take any money from Mr. Allen's pockets-Defendants and Mr. Moore did an "overt act calculated and designed" to rob Mr. Allen when Defendants brandished their weapons in the open apartment as Mr. Moore moved toward Mr. Allen with the intent to take money from his pockets. See Price, 280 N.C. at 157-58, 184 S.E.2d at 869. Therefore, we hold the trial court did not err by denying Defendants' motions to dismiss the charges of attempted armed robbery of Mr. Allen against both Defendants.
IV. Challenge to Jury Instructions on Acting in Concert
Defendant Calderon next contends that he could not have been convicted of the attempted robbery of Mr. Allen under the theory of acting in concert because the trial judge did not specifically instruct the jury on acting in concert in its charge on that offense and, thus, Mr. Moore's actions could not have been imputed to Defendant Calderon.
"This Court reviews jury instructions contextually and in its entirety." State v. Blizzard, 169 N.C.App. 285, 296, 610 S.E.2d 245, 253 (2005) (internal quotation marks omitted). "The charge will be held to be sufficient if it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed." Id. at 296-97, 610 S.E.2d at 253 (internal quotation marks omitted). "The party asserting error bears the burden of showing that the jury was misled or that the verdict was affected by [the] instruction." Id. at 297, 610 S.E.2d at 253 (alteration in original) (internal quotation marks omitted). "Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error *409 was likely, in light of the entire charge, to mislead the jury." Id. (internal quotation marks omitted).
In the present case, the parties conducted a charge conference in chambers. When the court announced that it was "time for our on-the-record charge conference," the court read out the extensive list of the pattern jury instructions it intended to give, which included the following:
104.35, flight in general; 104.90, identification of a defendant as a perpetrator; 105.20, impeachment or corroboration by prior statements of a witness; 101.42, when you have multiple defendants charged with the same crimes; 202.10, acting in concert; 201.10, the attempt *139 instructions in general; 217.20 is robbery with a firearm; 217.10, common law robbery.
(Emphasis added.) After reading the list of proposed pattern jury instructions, the court invited the parties to request additional instructions or to indicate whether any of the proposed instructions should be stricken. At this time, Defendant Calderon's counsel stated: "Your Honor, we have no objections. We spent I think a fair amount of time going over that in chambers, as you said, and I think those are the appropriate instructions to be given to the jury."
In its instruction to the jury, the trial court repeated the acting in concert instruction after it gave the instruction for robbery with a firearm and after it gave the instruction for common law robbery. However, the court did not repeat the acting in concert instruction after it gave the instruction for attempted robbery with a firearm. Neither Defendant Calderon nor the State objected to the trial court's seemingly inadvertent omission of the repetition of the acting in concert instruction immediately following the attempted robbery instruction, which was given after the court's instructions for robbery with a firearm and before the court's instructions for common law robbery. Additionally, the record shows that neither Defendant Calderon nor the State requested that the trial court give the acting in concert instruction to the exclusion of the attempted robbery instruction. Nevertheless, looking at the charges to the jury in their entirety, and when considering the evidence presented-that Mr. Moore approached Mr. Allen with the intent of committing robbery while Defendants continuously pointed their weapons at the people from whom Mr. Moore was taking money in the apartment-we are not persuaded that the trial court's failure to repeat the acting in concert instruction after the attempted robbery instruction was likely to have misled the jury. Accordingly, we overrule this issue on appeal.
V. Instruction on Lesser-Included Offenses
Defendant Calderon and Defendant Miller finally contend the trial court committed plain error by failing to instruct the jury on attempted larceny and attempted common law robbery, respectively, as the lesser-included offenses for the charge of attempted armed robbery of Mr. Allen. Defendants assert that, because Mr. Allen was "passed out" or asleep at the time that Mr. Moore attempted to take property from Mr. Allen's pockets, Mr. Allen's life was not endangered or threatened by Defendants' weapons, and the State's evidence was insufficient to support Defendants' respective convictions of the attempted armed robbery of Mr. Allen. Again, we disagree.
*140 As we discussed above, an attempt to rob another person of personal property "occurs when the defendant, with the requisite intent to rob, does some overt act calculated and designed to bring about the robbery, thereby endangering or threatening the life of a person," see Price, 280 N.C. at 157-58, 184 S.E.2d at 869, and "once a defendant engages in an overt act, the offense [of attempt] is complete[.]" Key, 180 N.C.App. at 292, 636 S.E.2d at 821-22 (second alteration in original) (internal quotation marks omitted). Because Defendants were convicted of the attempted armed robbery of Mr. Allen and not of robbery with a firearm with respect to Mr. Allen, we conclude that Defendant Calderon's reliance on Dalton, 122 N.C.App. at 671, 471 S.E.2d at 660-61 (arresting judgment on the charge of robbery with a dangerous weapon after concluding that the defendant took the victim's purse *410 from her home while she was asleep because the victim "could not have known of the presence of the knife [during the time that her purse was taken] and could not have been induced by [the knife] to part with her purse"), is misplaced.
In their arguments in support of this issue on appeal, Defendants do not dispute that the State presented evidence showing that Defendants and Mr. Moore armed themselves and went to the apartment for the purpose of robbing the people therein. Defendants then pointed their weapons at the people in the apartment as Mr. Moore rifled through several people's pockets, including Mr. Allen's, for the purpose of taking their money. Since "[a]n instruction on a lesser-included offense must be given only if the evidence would permit the jury rationally to find [the] defendant guilty of the lesser offense and to acquit him of the greater, " State v. Millsaps, 356 N.C. 556, 561, 572 S.E.2d 767, 771 (2002) (emphasis added), we conclude that the trial court was not required to give an instruction on a lesser-included offense for the charge of attempted armed robbery of Mr. Allen. Because we hold the trial court did not err by failing to instruct the jury on the lesser-included offenses of attempted larceny or attempted common law robbery, we decline to address Defendants' remaining assertions with respect to this issue on appeal.
NO PREJUDICIAL ERROR.
Judges HUNTER, JR. and DIETZ concur.