IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-97

No. COA20-17

Filed 6 April 2021

Bladen County, Nos. 15 CRS 52090, 16 CRS 25-27

STATE OF NORTH CAROLINA

v.

CHRISTOPHER BALDWIN

Appeal by defendant from judgments entered 1 February 2019 by Judge Imelda Pate in Bladen County Superior Court. Heard in the Court of Appeals 9 March 2021.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Francisco Benzoni, for the State.*

*Glover & Petersen, P.A., by Ann B. Petersen, for defendant-appellant.*

TYSON, Judge.

Christopher Baldwin ("Defendant") appeals from judgments entered after a jury returned verdicts of guilty of first-degree murder, attempted first-degree murder, and felony conspiracy to commit first-degree murder. We find no error.

## I. Background

Montise Mitchell had engaged in a long-standing feud with the Council family. In March 2013, Montise, Antwan Council, and Antwan's cousin, Robert Council,

worked together at a Smithfield Foods processing and packing plant. A supervisor asked Robert to assist a pregnant coworker with lifting meat. Montise, the putative father of the coworker's unborn child, observed the interaction, and became angry with Robert for helping the coworker. Montise wanted to fight with Robert. Robert agreed to meet and fight Montise at a nearby gas station.

¶ 3 When Robert left work that evening, Montise, his father and brother, and several other people blocked Robert's car in the plant's parking lot with a truck and ambushed him. They assaulted Robert and injured him so badly he required medical attention. Smithfield's security officers were called to break up the affray. Montise was criminally prosecuted for the assault on Robert. Montise was ordered to pay restitution for Robert's medical bills.

¶ 4 Antwan called Robert several months after the fight and let Robert know Montise was visiting another cousin. Robert and Antwan drove over to their cousin's house and a fight ensued. As Antwan and Robert approached Montise, he reached for his waistband. Antwan restrained Montise by grabbing his arms. Robert hit Montise several times. No one reported this fight to the police.

¶ 5 On 8 November 2015, Montise's sister, Shanika Mitchell, and Montise's girlfriend, D'Nayza Downing, contacted Antwan to obtain marijuana. D'Nayza and Shanika traveled to Antwan's and his brother, Darrell Council's home. D'Nayza and Shanika returned to Montise and Shanika's mother's house for some time and later

contacted Antwan again about getting together. Antwan and Darrell picked up the women sometime after 5:00 p.m. and returned to the Council home. The group sat outside for two hours in Darrell's SUV and smoked marijuana.

¶ 6 D'Nayza and Shanika texted Montise to set up Antwan to be ambushed while the group smoked in the car. Montise responded that he planned to shoot Antwan. He texted them he was "gonna do it" when Antwan and Darrell dropped D'Nayza and Shanika off. Montise later texted he would "do it" down the road somewhere from Montise and Shanika's mother's house.

¶ 7 Antwan and Darrell drove D'Nayza and Shanika back to Montise and Shanika's mother's house off Center Road shortly after 8:00 p.m., well after dark. Antwan told Shanika that he would see her later. Shanika responded, "You ain't got to worry about that."

¶ 8 The Council brothers left and drove back down Center Road. When they approached the intersection of Center Road and Twisted Hickory Road, they saw a man dressed in a black hoodie standing in the middle of the street. The man pulled a gun from his waistband and opened fire. Antwan recognized the shooter as Montise Mitchell, Shanika's brother.

¶ 9 Defendant was also present at the intersection and opened fire on Darrell's truck. Montise fired eight shots into Darrell's vehicle from the driver's side of the road. Defendant opened fire from the opposite side of the road. Defendant fired

thirteen shots from the passenger's side of the road.

¶ 10        Antwan heard gunshots coming from both sides of the vehicle and ducked down in the backseat of the truck. The truck spun in the intersection. Antwan asked Darrell if he was okay. Darrell responded "no" and put his head down. The truck came to a stop in the ditch. Antwan rolled down the passenger window and crawled out. Antwan saw two men fleeing from the scene. Antwan also ran from the scene and called 911. Police responded to the scene of the shooting. Antwan was able to escape unharmed. Darrell was killed in the ambush.

¶ 11        Montise and Defendant were close friends, who were together six or seven days per week. Prior to the ambush, Montise and Defendant had driven around, before returning to Montise's and Shanika's mother's house. They had waited at the house for almost an hour prior to leaving for the ambush.

¶ 12        Montise and Defendant returned to Montise's and Shanika's mother's house a few minutes after the shooting. Montise had left a rental car at his mother's house. Defendant, Montise, Shanika, and D'Nayza drove together to a grocery store parking lot in Cameron. Montise gave the keys of the car to an unknown person in the parking lot. This person drove the car away. Montise's father and grandmother then picked them up and drove them away. Montise and the others in the car dropped D'Nayza off at her grandmother's house and left together.

¶ 13        During the investigation police found shell casings on both sides of the

intersection. Forensic evidence showed bullets struck Darrell's vehicle on both sides. The driver's side was hit five times and the passenger's side was hit once. Montise was positioned on the driver's side of the vehicle at the intersection and fired eight times. Defendant was positioned on the passenger's side and fired thirteen times. Darrell's truck passed between the two shooters.

¶ 14    Lt. Johnson, the lead investigator with the Bladen County Sheriff's Office, interviewed D'Nayza. D'Nayza identified Defendant as a suspect. Lt. Johnson called Defendant's mother. Defendant returned Lt. Johnson's call and agreed to meet at his mother's house. Lt. Johnson arrested Defendant at his mother's house and transported him to the Lumberton police station. Lt. Johnson advised Defendant of his *Miranda* rights, which he waived. Defendant told Lt. Johnson he was at home all day 8 November 2015 in a videotaped interview.

¶ 15    Defendant was transported to Bladen County and jailed. Defendant told Lt. Johnson he wished to speak to him again. Defendant was again advised of and waived his rights. Defendant admitted to Lt. Johnson that he had lied in his first interview. Defendant was present with Montise on 8 November 2015 at Montise and Shanika's mother's house for an hour prior to the shooting. Defendant admitted being present at the scene of the shooting, where he possessed and fired a gun. Defendant claimed he was firing reflexively and trying to protect himself. He heard gunshots, pulled his gun, and fired at an angle. Defendant said he did not know who was inside

the vehicle.

Montise and Shanika were later apprehended in Robeson County with the assistance of the United States Marshals Service and the Robeson County Sheriff's Department.

Defendant was indicted for (1) first-degree murder of Darrell Council; (2) discharging a firearm into a vehicle while occupied and in operation; (3) attempted first-degree murder of Antwan Council; and (4) conspiracy to commit first-degree murder against Antwan Council. The case was tried and a jury returned guilty verdicts on all charges. Defendant was found guilty of first-degree murder on the basis of lying in wait and felony murder but acquitted on the basis of malice, premeditation and deliberation.

Judgment on the offense of discharging a firearm was arrested. The trial court sentenced Defendant to life without possibility of parole for the first-degree murder of Darrell, consolidated the other offenses and sentenced Defendant to an active sentence of 150 to 192 months to run at the expiration of the sentence for first-degree murder. Defendant gave oral notice of appeal in open court.

## II. Jurisdiction

This Court possesses jurisdiction pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444(a) (2019).

## III. Issue

¶ 20        Defendant argues since the State presented his exculpatory statement, which was otherwise consistent with the evidence, the State's evidence was insufficient to submit or support a conviction for first-degree murder, conspiracy to commit first-degree murder, and attempted first-degree murder.

## IV. Defendant's Motion to Dismiss

### A. Standard of Review

¶ 21        "This Court reviews the trial court's denial of a motion to dismiss *de novo*. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (citations omitted).

¶ 22        "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995).

### B. Exculpatory Statement

¶ 23        Defendant argues his statement that after he heard gunshots being fired from

the vehicle, he turned and pulled his gun and fired shots at an angle not aiming at the vehicle was exculpatory evidence and consistent with other evidence presented by the State. Defendant asserts the evidence is insufficient to show he acted in concert with Montise to murder Darrell.

¶ 24 Defendant's statement is inconsistent with the other evidence presented by the State. Defendant admitted: he was on the opposite side of the road during the shooting than Montise; had a gun at the scene of the shooting; fired the gun during the shooting; and, initially lied about his location during his first interview with the police. Forensic evidence showed Defendant fired the weapon thirteen times during the incident and both sides of the vehicle were hit by bullets. Defendant testified he spent an hour at Montise and Shanika's mother's house prior to the shooting and fled from the scene with Montise, Shanika, and D'Nayza.

## C. First-Degree Murder

¶ 25 Our General Statutes define first-degree murder as: "A murder which shall be perpetrated by means of . . . lying in wait . . . shall be deemed to be murder in the first degree." N.C. Gen. Stat. § 14-17(a) (2019). A murder in which the perpetrator lies in wait and ambushes a victim in a private attack is also a first-degree murder. *State v. Grullon*, 240 N.C. App 55, 60, 770 S.E.2d 379, 383 (2015) (citing *State v. Leroux*, 326 N.C. 368, 375, 390 S.E.2d 314, 320 (1990)).

¶ 26 Under the felony-murder rule, the killing of a human being in the course of

committing another felony with the use of a deadly weapon is also a first-degree murder. N.C. Gen. Stat. § 14-17; *State v. Wall*, 304 N.C. 609, 612, 286 S.E.2d 68, 70-71 (1982). This felony includes firing into an occupied vehicle while in operation with a deadly weapon. *Wall*, 304 N.C. at 612-13, 286 S.E.2d at 71 (citations omitted).

¶ 27    The State advanced the theory of Defendant acting in concert with Montise. "Acting in concert means that the defendant is present at the scene of the crime and acts together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime." *State v. Calderon*, 242 N.C. App. 125, 135, 774 S.E.2d 398, 407 (2015) (citations and internal quotations omitted).

¶ 28    Under this theory, two or more persons, who joined together in a purpose to commit a crime, are responsible for the unlawful acts committed by the other person, so long as those acts are committed in furtherance of the crime's common purpose. *Id*. The State need not show Defendant in fact fired the bullet that killed Darrell, but that Defendant acted in concert with Montise to perform the killing. If Montise's actions met every element of first-degree murder, with Defendant acting in concert with Montise, Defendant is criminally liable for the murder of Darrell Council. *Id.*

¶ 29    Here, the State's evidence tends to show all elements of first-degree murder were met. Darrell was killed as the proximate cause of an assault with a deadly weapon by Montise and Defendant lying in wait and ambush. Darrell was killed

when Montise and Defendant fired their guns into a vehicle occupied and in operation, a felony, as Darrell drove his vehicle on the public highways through the intersection of Center Road and Twisted Hickory Road.

¶ 30        The State's evidence tended to show Montise had a longstanding feud with the Council family. This feud predated the shooting by two years. Immediately prior to the shooting, Montise texted his sister, Shanika, and girlfriend, D'Nayza to set up an ambush in which he planned to kill the Council brothers. While Defendant was present, Montise texted Shanika and D'Nayza for several hours while they were with the Councils and shared his intent to kill the brothers.

¶ 31        The State's evidence also tended to show Montise and Defendant were close friends. They spent part of the day prior to the shooting driving around together. They then spent over an hour at Montise's and Shanika's mother's house immediately prior to the shooting.

¶ 32        The evidence also tended to show this was a planned ambush. When the Council brothers drove up to the intersection, Montise was positioned in the center of the road, and then moved to one side as the Councils drove through the intersection. Defendant was positioned opposite Montise. Both fired their guns at the vehicle as Darrell drove it through the intersection. Montise and Defendant were positioned such that the SUV had to drive between them.

¶ 33        Montise fired eight shots; Defendant fired thirteen. The driver's side of the

vehicle was hit five times. The passenger's side was hit once. A bullet fired through the driver side door dealt the fatal injury to Darrell.

¶ 34        After the shooting, Montise and Defendant fled from the scene together. They met with Shanika and D'Nayza, who had communicated with Montise to set up the ambush. Defendant, the Mitchells, and D'Nayza drove together to Cameron, where the rental car they rode in was disposed of. All four were picked up by Montise's father and grandmother and left together.

¶ 35        The jury was instructed on the theory of acting in concert. The State was required to present evidence tending to show all the elements of first-degree murder and that Montise and Defendant were acting according to a common scheme or plan. This evidence must have been sufficient to permit a reasonable juror to find, beyond a reasonable doubt, all elements of first-degree murder were met. This evidence must also be sufficient to permit a reasonable juror to conclude Montise and Defendant were acting in concert.

¶ 36        Here, the State's evidence is sufficient to present the charge of first-degree murder to the jury. The State provided sufficient evidence to show that Darrell was killed as the proximate cause of an assault with a deadly weapon, by Montise and Defendant lying in wait to ambush Darrell as he drove through the intersection. The State also provided sufficient evidence tending to show Darrell was killed when Montise and Defendant fired into his occupied and moving vehicle. Every element of

the convicted theories of first-degree murder is attributable to Montise. Montise and Defendant's conduct during and following the shooting is sufficient for a reasonable juror to infer they were acting in concert. Defendant may be held responsible for Montise's felonious conduct made in furtherance of the common plan to ambush and kill Darrell. Defendant's argument is overruled.

### D. Attempted First-Degree Murder

¶ 37        Defendant was also charged with the attempted first-degree murder of Antwan. Attempted first-degree murder is when a person has (1) the specific intent to kill another person unlawfully; (2) performs an overt act calculated to carry out that intent; (3) with malice, premeditation, and deliberation; (4) and fails to complete the intended killing. *State v. Peoples*, 141 N.C. App. 115, 117, 539 S.E.2d 25, 28 (2000) (citations omitted). As with the first-degree murder charge of Darrell, the State advanced a theory of acting in concert. *See Calderon*, 242 N.C. App. at 135, 774 S.E.2d at 407.

¶ 38        The State's proffered evidence sufficient to support a conviction of attempted first-degree murder overlaps, in part, with the evidence in supporting the first-degree murder of Darrell. Acting together, Montise and Defendant had the specific intent to kill Antwan. Montise's intent is evidenced by the text messages shared between Montise, his sister, and D'Nayza. Montise expressly states his intent to kill Antwan upon discovering Shanika and D'Nayza were with him and Darrell. Defendant's

intent to assist Montise in the killing may be reasonably inferred by: Defendant spent a portion of the day immediately prior to the shooting with Montise, he was present at the shooting with Montise, fired his own gun at the scene of the shooting, fled the scene with Montise, rode with Montise while he disposed of his rental vehicle, and then continued riding with Montise after Montise's family dropped off D'Nayza.

¶ 39        Both Montise and Defendant performed an overt act to execute Montise's intent to kill Antwan. As Darrell drove himself and Antwan through the intersection, both Montise and Defendant opened fire in the direction of the Councils' vehicle. Evidence shows Montise fired eight shots, and Defendant thirteen shots.

¶ 40        Malice, deliberation, and premeditation may be shown by the evidence presented at trial. Montise texted his sister and D'Nayza while with Defendant. Montise expressly shared his desire to kill Antwan. Montise and Defendant spent the hour immediately prior to the shooting together at Montise's and Shanika's mother's house. Montise and Defendant were both positioned at the intersection of Center Road and Twisted Hickory Road. Both were armed and fired their weapons when Darrell and Antwan drove through the intersection.

¶ 41        While Darrell was killed in the shooting, Antwan miraculously escaped physical harm. The first-degree murder fell short of completion. The State's evidence tends to show Defendant attempted to kill Antwan. Construed in the light most favorable to the State, sufficient evidence exists from which a reasonable jury could

find and convict Defendant of being guilty of attempted first-degree murder. Defendant's argument is overruled.

### E. Conspiracy to Commit First-Degree Murder

¶ 42        "The elements of conspiracy to commit murder are: (1) defendant entered into an agreement with at least one other person; and (2) the agreement was for an unlawful purpose, here, to commit or assist in committing [first-degree] murder." *State v. Jackson*, 189 N.C. App. 747, 754, 659 S.E.2d 73, 78 (2008) (citing *State v. Larrimore*, 340 N.C. 119, 156, 456 S.E.2d 789, 809 (1995)).

¶ 43        "Direct proof of [a conspiracy] is not essential . . . it may be, and generally is, established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy." *State v. Whiteside*, 204 N.C. 710, 712, 169 S.E. 711, 712 (1933) (citation omitted).

¶ 44        As with the chargers discussed above, the State provided evidence that tended to show Montise and Defendant were close friends, often together for several days a week. They spent the day immediately prior to the shooting together. Montise communicated with his sister and D'Nayza to set up an ambush for the Council brothers that evening. Both Montise and Defendant were at the shooting; Defendant was positioned on the opposite side of the road from Montise. Defendant had a firearm.

¶ 45        Defendant fired his weapon thirteen times at Darrell's vehicle as it drove past. Defendant fled the scene of the shooting with Montise. Defendant rode with Montise while Montise's rental car was disposed of. Defendant got in a second vehicle and left with several members of the Mitchell family and D'Nayza. Later, Defendant lied to the police about his whereabouts on the day of the shooting.

¶ 46        Taken together, sufficient evidence exists for a juror to conclude beyond a reasonable doubt that Montise and Defendant acted in concert to kill Antwan, according to a common scheme or plan between them. A juror could reasonably infer that Montise and Defendant conspired and came to an agreement in which Defendant would help Montise carry out his intent to ambush and kill Antwan and Darrell. The State's evidence was sufficient to support the jury's finding of Defendant's guilt. Defendant's argument is overruled.

## IV. Conclusion

¶ 47        The State's evidence tended to show Montise and Defendant acted together to murder Darrell, and pursuant to a conspiracy attempted to murder Antwan. Under the theory of acting in concert, the State's evidence is sufficient to show the elements of each of the offenses charged, and Defendant was a perpetrator of each offense. The trial court did not err in denying Defendant's motion to dismiss. *State v. Earnhardt*, 307 N.C. 62, 66, 296 S.E.2d 649, 651-52 (1982). *It is so ordered.*

        NO ERROR.

Judges MURPHY and GORE concur.